412 So.2d 1313 (1982)
STATE of Louisiana
v.
Reginald ROBICHEAUX and Jerome Powell, Jr.
No. 81-KA-0192.
Supreme Court of Louisiana.
April 5, 1982.
Dissenting Opinion April 16, 1982.
Rehearing Denied May 14, 1982.
*1315 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Richard Petre, Jr., and William R. Campbell, Jr., Asst. Dist. Attys., for plaintiff-appellee.
Charles L. Elloie, New Orleans, for Reginald Robicheaux.
John J. Dolan, New Orleans, for Jerome Powell, Jr.
Dissenting Opinion of Lemmon, J., April 16, 1982.
DENNIS, Justice.
On October 30, 1979, defendants Jerome Powell and Reginald Robicheaux, were jointly charged by bill of information with armed robbery. La.R.S. 14:64. Defendants' initial trial on December 18, 1979, resulted in a mistrial because of prosecutorial error during closing argument. A second jury trial was conducted on January 24, 1980, resulting in a verdict of guilty as charged against both defendants. The state filed a subsequent bill of information alleging that Powell had been convicted of two previous felonies. After a hearing on the multiple bill on February 7, 1980, Powell was sentenced to 49½ years at hard labor without benefit of probation, parole or suspension of sentence. Robicheaux filed a motion for a new trial, which was denied after several hearings on October 20, 1980. Robicheaux was sentenced to serve 25 years at hard labor without benefit of probation, parole or suspension of sentence. From these convictions, both defendants appealed.
The testimony of the victim of the armed robbery, an eyewitness, and the arresting officer revealed the following facts. At approximately 1:00 a. m. on October 20, 1980, Royal Jenkins had car trouble near the intersection of Basin and Dumaine Streets in New Orleans. Jenkins then walked to the corner of Basin Street and Claiborne Avenue to use a public telephone and attempted to call AAA for road service. This particular intersection is well traveled, well lighted, and near several popular late night lounges. As yet unsuccessful, Jenkins was making a final attempt to contact AAA at approximately 3:00 a. m. when he was accosted by two black men. One of the men pointed a gun in Jenkins' face, said "Give it here," and then snatched a gold chain and medallion from around Jenkins' neck. After the robbers fled down Basin Street, Jenkins called the police, who arrived on the scene several minutes later. The officers instructed Jenkins to get in the back seat of the patrol car as they rode *1316 around the neighborhood in search of the robbers.
During the robbery, Gregory Clark, an off-duty security guard, had come from inside a nearby lounge and witnessed the crime from a distance of approximately fifteen feet away. After the robbers fled, Clark recognized another security officer, Alvin Brooks, approaching the scene down Basin Street. Clark informed Brooks that a robbery had just taken place and both men pursued the robbers. Approximately fifteen minutes later Clark and Brooks approached two men walking down North Robertson Street and Clark identified them as the robbers. Clark and Brooks apprehended the two men and returned with them to the scene of the crime. When they arrived, Jenkins immediately identified Powell and Robicheaux as the men who had robbed him some twenty minutes earlier. A search of the two revealed neither the medallion nor the weapon. Both Jenkins and Clark positively identified Powell and Robicheaux at trial as the robbers.

POWELL'S ASSIGNMENT OF ERROR NO. 1
On February 16, 1978 Powell was convicted of simple burglary after a jury trial. On May 9, 1978, Powell pleaded guilty to another charge of simple burglary. Both of these previous convictions were used by the state to enhance Powell's sentence pursuant to La.R.S. 15:529.1. In Powell's first assignment of error he contends that the February 16, 1978 simple burglary conviction cannot be used against him because the record does not reflect that he was informed of his right to appeal. Art. I, § 19, Louisiana Constitution of 1974.
This assignment is without merit. The record clearly indicates that the trial judge advised Powell that he had a right to appeal his conviction. The minute entry from the date of sentencing states, "[t]he court informed the defendant that he had a right to take a suspensive appeal to the Supreme Court. The Court further explained to the defendant in the event he could not afford an attorney that an attorney would be furnished by the court to represent the defendant on appeal without cost to him."

POWELL'S ASSIGNMENT OF ERROR NO. 2
In his second assignment of error Powell contends that the May 9, 1978 guilty plea to simple burglary cannot be used against him because the transcript from the guilty plea fails to show that he was adequately informed of his rights before pleading guilty.
A review of the transcript of Powell's guilty plea reveals that Powell was informed by the trial court that by pleading guilty, "You also give up the right to remain silent because by pleading guilty you're not remaining silent." The transcript does not reflect that Powell was informed that he had a right to remain silent at trial. The record is devoid of evidence indicating that Powell received advice concerning his privilege against self-incrimination from any other source. Powell did sign a guilty plea form, but the form does not mention the right against self-incrimination.
The United States Supreme Court in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), noted that several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial, viz., the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the states by reason of the Fourteenth, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), the right to trial by jury, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and the right to confront one's accusers, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and held that it "cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. at 243, 89 S.Ct. at 1712.
This court in State ex rel Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), expounding Boykin, held that "in taking a *1317 plea of guilty, an express and knowing waiver of at least these three federal constitutional rights must be made which waiver cannot be presumed." 260 La. at 103, 255 So.2d 85.
In State v. Martin, 382 So.2d 933 (La. 1980), this court held that a plea based on a colloquy similar to that in question was not shown to have been intelligent and voluntary, and could not be used as a predicate for a subsequent charge. In that case the transcript of the predicate plea of guilty showed that the trial judge's sole reference to defendant's right against self-incrimination was as follows: "By pleading guilty, you're also waiving your right to remain silent because you're not remaining silent when you plead guilty."
In Martin, applying the principles of Boykin and State ex rel Jackson v. Henderson, this court held that the information conveyed by this presentation of an accused's right against self-incrimination was insufficient because it failed to inform the defendant of his right to stand trial without being forced to testify against himself; because the choice to stand trial is the crux of the decision to plead guilty; because an accused cannot make this choice intelligently if he is unaware of the rights he may exercise at trial; and because the record did not show in any way that the defendant intended to waive his right not to testify against himself at trial. State v. Martin, supra.[1]
The colloquy in the present case shows that the information conveyed to Powell about his right against self-incrimination was equally deficient. Insofar as the record discloses, the defendant was not informed of his right to stand trial without being forced to testify against himself. For this reason, his guilty plea should not have been used as a basis for the multiple offender charge against him.
The case of State v. Bowick, 403 So.2d 673 (La.1981), is inapposite to the present case. Unlike the present case, the record of the predicate plea in Bowick was not completely silent as to the defendant's knowledge and voluntary waiver of his right to stand trial without being forced to testify against himself. In a written waiver form signed at the entry of the guilty plea defendant acknowledged that his attorney had previously advised him of his privilege against self-incrimination. He also acknowledged that his lawyer had explained he was giving up that right by pleading guilty and was admitting his crime. Further, the trial court carefully reviewed those matters with defendant in a colloquy on the record. The judge made sure that defendant understood that by pleading guilty he was giving up his right to have a jury decide his guilt, his right to confront his accusers, his privilege against self-incrimination, and his right to present evidence on his own behalf. Defendant unreservedly responded in an affirmative manner, clearly revealing an awareness of the rights being relinquished by his plea. The trial court also made sure defendant understood that by pleading without reservation he was giving up his right to contest such matters as the seizure of evidence by the police. The judge also carefully explained the possible sentence to which defendant was exposed and carefully determined that no promises had been made regarding the sentence to be imposed. 403 So.2d at 674.
Thus, the Bowick case is distinguishable from Boykin, Martin and the present case because there was enough evidence of defendant's knowledge of his privilege against self-incrimination for a majority of this court to infer reasonably that he was aware that he had a right to stand trial without being forced to testify against himself. In the present case, as in Boykin and Martin, there is no evidence of record to support such a rational inference.
Accordingly, the trial court erred in its failure to quash Powell's May 9, 1978 guilty *1318 plea and exclude it as a predicate for the multiple offender adjudication.

ROBICHEAUX'S ASSIGNMENT OF ERROR NO. 1
By this assignment of error, Robicheaux argues that the trial court committed reversible error in denying his new counsel's motion for a continuance. After the initial trial of both defendants ended in a mistrial on December 18, 1979, a minute entry dated December 21, 1979, shows that Robicheaux retained new counsel on that date. The second trial of both defendants was set for January 24, 1980. Robicheaux claims that the denial of the motion for continuance precluded his new counsel from interviewing witnesses whose testimony was relevant to his defense. (Both of these witnesses testified at a hearing on Robicheaux's motion for a new trial.)
The record does not reflect that either an oral or written motion for a continuance was made by Robicheaux's newly retained counsel. In any case, a motion for a continuance must be in writing and allege specifically the grounds upon which it is based. La.C.Cr.P. art. 707. When no written motion for continuance appears of record, the denial thereof will not be considered. State v. Jones, 340 So.2d 563 (La. 1976); State v. Bullock, 329 So.2d 733 (La. 1976).[2] Moreover, new counsel became attorney of record more than one month prior to the trial date and was presumably aware that Robicheaux's initial trial had just ended in a mistrial. On the facts of this case it does not appear that one month would be insufficient time for new counsel to prepare his case. This assignment is without merit.

ROBICHEAUX'S ASSIGNMENT OF ERROR NO. 2
By this assignment of error Robicheaux argues that the trial court erred in denying his motion for a new trial based on newly discovered evidence. At two hearings on the motion for a new trial Robicheaux presented testimony of Peter C. Bonura and Melvin Matthews. In an effort to discredit the victim's testimony that he had attempted to call AAA, Bonura, an employee of AAA, was called to testify that there was no record of a Mr. Royal Jenkins reporting to AAA that he had car trouble on the date of the crime. In an effort to discredit the identification of Robicheaux by the victim and eyewitness, Matthews, a hot dog vendor operating in the vicinity of the robbery on the night of the offense, testified that there "were quite a few people on the street" on the night of the offense and that he did not witness the robbery.
The court is required to grant a new trial whenever new and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict of guilty. La.C.Cr.P. art. 851(3). Neither the appellate nor supervisory jurisdiction of the Supreme Court may be invoked to review the refusal to grant a new trial, except for error of law. Great weight must be attached to the exercise of the trial judge's discretion, which should not be disturbed on review if reasonable men could differ as to the propriety of the trial judge's action. State v. Talbot, 408 So.2d 861 (La.1981); State v. Jackson, 253 La. 205, 217 So.2d 372 (1968). This court should defer to the trial court's reasonable decision in a situation calling for discretion when resolving a new trial motion. State v. Talbot, supra.
The trial court correctly denied the motion for a new trial. The testimony of Bonura and Matthews was rebuttal and impeachment evidence that could have been discovered with reasonable diligence before this second trial, especially since defendant had the benefit of a preview of the state's *1319 case upon the first trial which ended in a mistrial. Furthermore, even if this evidence had been newly and diligently discovered, it probably would not have changed the verdict of guilty because neither it nor any of the evidence introduced at trial, directly or indirectly, seriously disputed the identification testimony of the security guard and the victim.
This assignment is without merit.

ROBICHEAUX'S ASSIGNMENT OF ERROR NO. 3
By this assignment Robicheaux contends that his twenty-five year sentence, without benefit of probation, parole or suspension of sentence, is excessive. A sentence for armed robbery must be served at hard labor without benefit of parole, probation or suspension and may range from a minimum of five years to a maximum of ninety-nine years.
Robicheaux argues that the trial court failed to follow the requirements of La.C. Cr.P. art. 894.1 in that the trial court did not consider any mitigating circumstances, nor did the court state for the record the considerations taken into account and the factual basis therefor in imposing sentence. Robicheaux claims that he is an honorably discharged veteran, with two years of college and no prior record of felony convictions.
The transcript of the sentencing hearing conducted on October 22, 1980 reveals that the trial court asked Robicheaux his age and place of birth. After Robicheaux responded that he was twenty-four years old and from New Orleans, the trial court sentenced him to twenty-five years at hard labor. Upon request by defense counsel to state the reasons for the sentence, the court responded, "The factual basis and this is Armed Robbery." The trial court ordered that a pre-sentence investigation be conducted. The report of the investigation reveals that Robicheaux is twenty-five years old and a full time student at Southern University in New Orleans. The report confirms Robicheaux's assertion that he has no previous felony convictions; his only previous conviction being for "Municipal Theft" for which he was fined $10.00 in March of 1975.
Trial judges are granted great discretion in imposing sentences, but even sentences within statutory limits may be excessive under certain circumstances. State v. Jones, 398 So.2d 1049 (La.1981); State v. Spencer, 374 So.2d 1195 (La.1979). Sentences must be individualized to be compatible with the offenders as well as the offenses. In deciding whether to confine a defendant or grant probation, the judge must consider certain factors enumerated in La.C.Cr.P. art. 894.1(A)(B). State v. Jones, supra. This article entitles the defendant to such an articulation and represents a legislative attempt to guide the trial judge in thoughtfully imposing an appropriate sentence under the facts and circumstances of the particular case. Also this serves as an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Ramos, 390 So.2d 1262 (La.1980). When the trial judge fails to state any reasons for the sentence a remand may be necessary. State v. Ortego, 382 So.2d 921 (La.1980).
This court has indicated, however, that a remand for more complete compliance with Article 894.1 is not necessary when the sentence imposed is not apparently severe, State v. Russel, 397 So.2d 1319 (La.1981), or where the record otherwise clearly illumines the sentencing choice, State v. Martin, 400 So.2d 1063 (La.1981) (On Rehearing). However, when the trial court does not articulate the reasons for imposing a particular sentence and there is no other evidence of record to illumine the sentencing choice, a sentence even within the lower range of sentences available to the trial court may appear to be arbitrary or excessive. State v. Williams, 397 So.2d 1287 (La.1981); State v. Ortego, supra.
The American Bar Association Standards for Criminal Justice Relating to Sentencing Alternatives and Procedures, Standard 2.1(d) (1968 Supplement), provides:

*1320 "It should be recognized that in many instances in this country the prison sentences which are now authorized, and sometime required, are significantly higher than are needed in the vast majority of cases in order adequately to protect the interests of the public. Sentences of twenty-five years or longer should be reserved for particularly serious offenses or, under the circumstances set forth in sections 2.5(b) and 3.1(c) (special term), for certain particularly dangerous offenders. For most offenses, on the other hand, the maximum authorized prison term ought not to exceed ten years except in unusual cases and normally should not exceed five years."
On the record before us, the sentence of twenty-five years at hard labor without the possibility of parole appears to be arbitrary and excessive. There is no evidence in the record indicating that Robicheaux is an extremely dangerous offender. According to the record, he has no previous felony convictions, and although Robicheaux has other misdemeanor arrests prior to the present offense, his only prior conviction was for a non-violent misdemeanor over five years ago. The defendant is twenty-five years old and a full-time student at Southern University in New Orleans. Although the crime of armed robbery is one which tends to invoke a single image in the minds of many, and one which is typically, and often justifiably, thought to demand a harsh sentence, there are many different kinds of robberies and many kinds of offenders who commit them. See ABA Standards § 2.1(d), supra. In comparison, this court has approved a sentence of fifteen years at hard labor without parole as being not apparently severe in the case of a defendant convicted of armed robbery of a 7-11 Food Store in New Orleans whose age, education, criminal record and other characteristics were not stated in the record. State v. Jones, 381 So.2d 416 (La.1980). By contrast, the defendant in this case received a substantially more severe sentence, although on the record his case appears to be much more sympathetic. In addition to the positive points stated earlier, his crime consisted of the armed robbery of a medallion on the street, rather than the robbery of a convenience store's cash register, which has more earmarks of habitual criminal activity.
Because of all these factors, we are unable to infer from the record in this case a reasonable basis for the sentence of twenty-five years at hard labor without parole. Accordingly, the sentence will be vacated and the case remanded for a sentencing. In imposing the new sentence, the trial judge is directed to comply with the mandatory requirements of La.C.Cr.P. art. 894.1, individualizing the sentence by stating for the record the considerations taken into account and the factual bases therefor. State v. Cox, 369 So.2d 118 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979).

ROBICHEAUX'S ASSIGNMENT OF ERROR NO. 4
By this assignment Robicheaux argues that the trial court erred in denying his motion for severance. He claims to have been prejudiced by being tried jointly with Powell, a previously convicted felon.
There is no indication in the record, transcripts or minute entries that Robicheaux made an oral or written motion for severance. It appears that this argument is being advanced for the first time on appeal. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of trial. La.C.Cr.P. art. 841. Moreover, since neither defendant testified at trial, Powell's previous felony convictions were not revealed to the jury.
This assignment is without merit.

ROBICHEAUX'S ASSIGNMENT OF ERROR NO. 5
By this assignment Robicheaux argues for the first time on appeal that it was reversible error to convict him of armed robbery of a gold chain when the bill of information charged robbery of $185.00 in United States currency. This assignment is without merit. The bill of information alleged *1321 that Powell and Robicheaux "robbed one Royal Jenkins of property of the value of One Hundred and Seventy-Five ($175.00) Dollars in the lawful money of the United States of America." [emphasis added] Moreover, a defendant cannot complain of the insufficiency of an indictment after verdict unless it is so defective that it does not set forth an identifiable offense against the laws of this state, and inform the defendant of the statutory basis of the offense. State v. Storms, 406 So.2d 135 (La.1981); State v. James, 305 So.2d 514 (La.1974). Clearly, the present indictment informed the defendant of the offense with which he was charged and the statutory basis thereof.
This assignment is without merit.

Decree
For the reasons assigned, defendant Powell's adjudication and sentence as a third felony offender within the meaning of La. R.S. 15:529.1 are set aside. Defendant Robicheaux's conviction is affirmed but the sentence imposed is vacated and set aside. The cases are remanded for proceedings not inconsistent with the views expressed herein.
WATSON, J., concurs and assigns reasons.
MARCUS and LEMMON, JJ., dissent and assign reasons.
BLANCHE, J., dissents for reasons assigned by MARCUS, J.
WATSON, Justice, concurring.
As to the issue presented by Powell's assignment of error number two, I reluctantly concur in the finding that the advice given as to the right against self-incrimination was insufficient. The rule in State v. Martin, 382 So.2d 933 (La., 1980) is a borderline situation when compared to the Boykin advice in State v. Hayes.
Likewise, the conclusion that twenty-five years is an excessive sentence on its face for the armed robbery in this case is a close call, although there is certainly no harm in remanding for further articulation.
Therefore, I respectfully concur.
MARCUS, Justice (dissenting).
In my view, when the trial judge informed Powell that, "[y]ou also give up the right to remain silent because by pleading guilty you're not remaining silent, he substantially complied with the Boykin requirement that defendant be informed that by pleading guilty he would be waiving his "privilege against compulsory self-incrimination." Hence, I consider that the trial judge properly denied defendant's motion to quash the May 9, 1978 guilty plea. Accordingly, I dissent from the setting aside of Powell's adjudication and sentence as a third felony offender. Moreover, I do not consider that Robicheaux's sentence of twenty-five years for being convicted of robbing a person at gunpoint is unconstitutionally excessive. Accordingly, I dissent from his sentence being vacated and set aside.
LEMMON, Justice, dissenting in part.
This court's decision in State v. Martin, 382 So.2d 933 (La.1980), is wrong and should be repudiated as an unreasonably formalistic approach.
The decision in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), did not establish a sort of "Miranda" warning for guilty pleas. The Court did not require that the defendant, prior to his plea of guilty, be informed in literal terms of his right to remain silent at trial. Boykin simply required, as a matter of constitutional due process, that the record (either on direct appeal or as developed in a postconviction hearing) establish that the defendant entered the plea of guilty voluntarily and knowingly. Although the decision pointedly noted that a silent record does not show that the defendant was aware of the important constitutional rights relinquished by a guilty plea (such as the right to trial by jury, the right to confront his accusers and the right against self-incrimination), the Court did not attempt to establish any fixed procedure for determining whether the record shows defendant *1322 made a knowing and voluntary waiver.[1]McChesney v. Henderson, 482 F.2d 1101 (5th Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974).
This court's decision in State ex rel Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), laid down, as a jurisprudentially established supervisory rule (similar to the legislatively established F.R.Cr.P. 11), the requirement that trial courts, prior to accepting a guilty plea, at least inform the defendant of the three constitutional rights mentioned in the Boykin decision. This was a good supervisory rule (though not as thorough as F.R.Cr.P. 11), and it was one which was simple and easy for trial courts to follow. Since the Boykin and Jackson decisions, Louisiana trial judges have generally engaged in an on-the-record colloquy with the defendant at the time of the guilty plea in order to insure that the defendant is entering the plea voluntarily and with full knowledge of the consequences. This is all that was constitutionally required by Boykin that the record establish that the defendant entered his plea voluntarily and with knowledge of its consequences.
When an appellate court reviews a guilty plea for constitutional validity, the determination depends on the totality of circumstances in each individual case and not on any three-right articulation or other magic word formula.[2] In the present case there was no constitutional violation, and we are not required by the Boykin decision or by any other constitutional principle to deny the state the use of the prior conviction to enhance defendant's sentence for his subsequently committed offense. The supervisory rule announced in the Jackson case arguably might justify setting aside a guilty plea in a direct appeal from that conviction, but it is not necessary to enforce the Jackson rule by preventing the state from seeking legislatively sanctioned enhanced penalties for repeat offenders who pleaded guilty in a constitutionally satisfactory proceeding. This reasoning is particularly applicable when (as here) defendant was represented at the plea by counsel (whose competency is unquestioned) and when (as here) the record not only reflects complete compliance with Boykin's constitutional requirement, but also reflects substantial compliance with Jackson's supervisory rule.
NOTES
[1] State v. Martin was overruled in part by State v. Williams, 392 So.2d 448, to the extent that the Martin decision allowed an attack on a conviction used as a predicate for a felon with a firearm charge. While the Williams decision disallowed collateral constitutional attacks of predicate felonies in such cases, it did not invalidate the views expressed in Martin regarding the need for proper "boykinization." State v. Halsell, 403 So.2d 688 (La.1980).
[2] This is not a case where the occurrences which allegedly made the continuance necessary arose unexpectedly or where the record reflects that the trial judge was fully aware of the grounds upon which defendant's motion was based and ruled thereon. See State v. Parsley, 369 So.2d 1292 (La.1979).
[1] Such a procedure was eventually established by F.R.Cr.P. 11(c) and (d), which provide:

"(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
"(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and
"(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and
"(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and
"(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and
"(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he had pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.
"(d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney."
[2] Although the "three-right articulation" rule of Jackson was intended as a minimum procedure for compliance with the constitutional due process concepts outlined in Boykin, it is arguably much more important to explain to an accused the elements of the offense and the maximum penalty exposure, rather than to parrot some wording advising him of his right to trial by jury.