418 So.2d 503 (1982)
STATE of Louisiana
v.
George YARBROUGH (Two cases).
STATE ex rel. George YARBROUGH
v.
STATE of Louisiana.
No. 81-KA-0278, 81-KA-1587 and 81-KH-1039.
Supreme Court of Louisiana.
June 3, 1982.
Rehearing Denied September 3, 1982.
*505 Chris Christofferson, Dwight Doskey, New Orleans, Orleans Indigent Defender Program, for George Yarbrough.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Thomas Chester, David Paddison, Louise Korns, Asst. Dist. Attys., for State.
THOMAS J. KLIEBERT, Justice Ad Hoc.[*]
The defendant, George Yarbrough, was charged by bill of information with armed robbery, plead not guilty, was tried before a twelve person jury, convicted and sentenced to hard labor for a term of twenty-five years. Defendant filed for and was granted an appeal. Thereafter, the State filed a bill of information charging the defendant as a multiple offender under La.R.S. 15:529.1. Subsequently, the State filed a motion to withdraw the multiple offense charge. This was granted by the trial court. Defendant then filed a pro se motion for a new trial. Two days later the State refiled its bill of information charging the defendant as a multiple offender.
The trial judge denied the defendant's motion for a new trial from which ruling the defendant seeks this court's review by writ of certiorari. Following a hearing on the multiple offender charge, the trial court found the defendant to be a third offender, vacated the single offender sentence of twenty-five years and under R. S. 15:529.1 sentenced the defendant to hard labor for a term of fifty years. The defendant has also appealed from the multiple offender proceedings.[1]
*506 First, we consider the defendant's assignment of error No. 6 wherein defense counsel argues the trial court erred in denying the motion to suppress evidence obtained in a warrantless search of the apartment and car of the defendant's girl friend, Jacqueline Scott.
Clearly the specific items (.22 caliber revolver,.38 caliber live rounds of ammunition recovered from a sofa in Ms. Scott's apartment as well as a bank book and the book taken from Ms. Scott's purse) which the defendant contends should not have been admitted into evidence fail to qualify under either the "plain view" or "search incident to lawful arrest" exceptions to the rule prohibiting unreasonable searches and seizure.[2] The state, however, contends Ms. Scott consented to the search of her premises and car and signed a consent form. Defense counsel maintains Ms. Scott only acquiesced to a claim of lawful authority and her subsequently executed consent form cannot vindicate an earlier unwarranted search.
Under its contention, in addition to proving the consent was given, the State has the burden of proving it was freely and voluntarily given. State v. Wolfe, La., 398 So.2d 1171 (1981). Only by analyzing the circumstances of an individual consent can one ascertain whether it was voluntary or coerced.
In the instant case, the issue of consent turns on the credibility of the two witnesses giving contradictory testimony as well as the circumstances surrounding the consent. Officer Keating testified that Ms. Scott consented at the outset and cooperated fully. Ms. Scott, however, testified that she did not consent to a search throughout the apartment. Because consent is a question of fact involving the credibility of witnesses, the determination of the trial judge, who had an opportunity to observe and hear the witnesses, is given great weight on review. State v. Robinson, 386 So.2d 1374 (La.1980); State v. Dunbar, 356 So.2d 956 (La.1978); State v. Schouest, 351 So.2d 462 (La.1977); State v. Temple, 343 So.2d 1024 (La.1977). The fact that Ms. Scott did accompany Officer Keating throughout the apartment, admitted to showing him the revolver locked inside the trunk of her car, subsequently did sign the consent to search form, and did in fact receive the minimum five year sentence for each of four robberies she plead guilty to, all seem to indicate that she voluntarily consented to the search in anticipation of lenient treatment. We cannot say, therefor, that the trial judge abused his discretion in overruling the defendant's motion to suppress the evidence.
In the Pro Se Assignment of Error No. 2, the defendant raises the issue of the State's alleged failure to supply evidence favorable to the defense. Counsel for the defendant filed an interrogatory requesting the State to inform the defendant of any negative identification made by witnesses in "a physical line-up" or "mug shot" showing. The State responded to the interrogatory as follows: "all are on the witness list."
Thereafter, during the hearing, on the motion to suppress evidence, defense *507 counsel attempted to elicit from a police officer what person, other than the ones that identified the defendant, were shown the defendant's picture. The trial judge sustained the State's objection to the question on the ground of relevancy, but instructed the State to disclose to the defendant any exculpatory information it may have in its possession. The prosecutor stated that the State had already complied with the requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1196,10 L.Ed.2d 215 (1963). Defense counsel noted an objection but did not pursue the issue further. The issue present here, therefore, is whether the State on the request of the defendant must disclose to the defendant the persons who were shown but could not identify the defendant's photographs and if so whether furnishing to defendant a list of the witnesses' names and addresses who were shown the photographs without indicating who could or could not identify the defendant's photograph is sufficient. The United States Supreme Court in Brady v. Maryland, supra, held that the prosecutor's withholding of evidence favorable to an accused requesting same violates the defendant's right to due process if the evidence is material to guilt or punishment irrespective of the good or bad faith of the prosecution. Based on the ruling in the Brady decision, supra, this Court, in State v. Landry, La., 388 So.2d 699, found error where the trial court upheld the prosecutor's decision to deny to the defendant requesting same the names and addresses of the witnesses who were unable to identify the defendant's picture in a photographic line-up.
In the instant case the State gave defense counsel the names and addresses of the five witnesses who were shown the pictures; but did not indicate which of the five, if any, could not identify the defendant's picture. Thus, the defendant was relegated to discovering on his own which of the five witnesses, if any, could not identify his photograph. Although the State is required to inform the defendant of his constitutional rights and to furnish him with an attorney, it is not required to present his defense to meet the requisite of a fair trial.
The defendant could have contacted the witnesses or he could have specifically raised an objection to the trial court and had the issue resolved before trial. The record does not disclose the reason the defendant did not pursue these alternatives. Thus, the defendant had the opportunity to, but did not meet the burden of showing there was an eyewitness who could not identify the defendant. Additionally, even applying the more lenient discovery standard espoused in State v. Sylvester, 388 So.2d 1155 (La.1980), the present record does not disclose the withholding of evidence by the State which could have influenced the verdict.
In his Pro Se Assignment of Error No. 5, the defendant raises as an issue the admission into evidence of the State's "Right of Arrestee Form." At the hearing on the motion to suppress, a police officer testified the form had been signed before the defendant made inculpatory statements, however, when the court asked the State to produce same it was unable to do so at the time; but promised to furnish the defense a copy if and when it was located. The defendant testified at his hearing that he had never been advised of his rights and had never signed a form waiving his rights. At the trial, the trial judge permitted the introduction of the form into evidence over the objection of the defendant. The prosecution contended the form had been discovered on the morning of the trial. Defense counsel did not move for a continuance or mistrial. However, defense counsel did make an objection.
The defendant did not testify at the trial and the jury was unaware of the defendant's testimony on the motion to suppress evidence. Therefore, the conflict in the defendant's testimony on the motion to suppress and the existence of the signed "Right of Arrestee Form" is not an issue here. The defendant, nevertheless, contends that the introduction of the statement buttresses the State's contention as to the voluntariness of the inculpatory statements. He argues his rights were thereby violated because he was denied any opportunity to *508 ascertain the genuineness of the signature on the inculpatory statements prior to trial.
We are not here concerned with the substance of the inculpatory statement; but rather, with the voluntariness of the statement. The waiver form is but one of the factors which can be used in determining the voluntariness of the statements. Several police officers testified the statements were voluntarily made and that the waiver form had been voluntarily signed. From this, the trial judge concluded the State proved the voluntariness of the statements and consequently denied the motion to suppress.
In State v. Fisher, 380 So.2d 1340 (La.1980), this court held the trial court did not abuse its discretion in admitting a defendant's inculpatory statement into evidence where the defendant contended he was not timely informed of the statements and of the State's intention to introduce same in evidence because the State had substantially complied with the requirements of Articles 716 and 729.3 of the Code of Criminal Procedure. Although the defendant is entitled to a fair trial, the State is not required to protect the defendant from his inculpatory statements, testimony or actions if wilfully and voluntarily given or taken by the defendant, even though the testimony, statements or actions subsequently result in conviction. We fail to see where the defendant sustained injury from the delay in being furnished a copy of the form until the time of trial. The trial court's action in admitting the form was proper.
Defendant pro se complains about the identification of him in line-ups or in photographs by two witnesses. He points to various physical features of himself which were not used by the eyewitnesses to identify him and therefore argues their identification is suspect. The defendant's attack goes to the credibility of Ms. Flucker and Ms. Williams and the weight of their testimony. The attack on Ms. Flucker's identification is based on her testimony that she did not make a positive identification in the line-up because she wanted to verify the existence of a scar over the defendant's eye before doing so. When she requested a closer look at the defendant, she was informed by the police officer the line-up was over. During the hearing on the motion to suppress and at the trial she made a positive identification of the defendant who did indeed have a scar over the eye.
The attack on Ms. Williams' identification is grounded in a contention no attorney was present when Ms. Williams made the identification of the defendant and that the identification was made solely in the presence of Officer Polit. We note that Ms. Williams and the defendant's female accomplice in the robbery also made positive identifications of the defendant during the trial.
Considering the totality of the circumstances dealing with the reliability of Ms. Flucker and Ms. Williams' identification of the defendant, it does not appear there was any substantial likelihood of suggestiveness in the identification or in a misidentification. Officer Polit and the two witnesses testified that no threats, coercion or suggestions of any kind were made regarding who to identify. Although both witnesses had a gun pointed at them and, therefore, were casual observers they each had an ample opportunity to view the defendant and they were each positive in their identification. Further, there is no evidence of prior inconsistencies in the giving of their descriptions and less than thirty days transpired between the crime and the identification. In our view, therefore, the defendant was not denied due process and the trial court did not err in denying the defendant's motion to suppress the identification. State v. Guillot, 353 So.2d 1005 (La.1977).
We find no merit in the defendant's pro se argument that the trial court erred in allowing the prosecution to introduce inculpatory statements by the defendant into evidence without complying with the notice requirements of Article 768 of the Code of Criminal Procedure. Contrary to the defendant's contention, the record shows the filing by the State of a "Notice of Intention to Use Confession" and the clerk's minute entry showing it was timely filed.
*509 Defense counsel assigns error to the trial judge's finding and sentencing of the defendant as a multiple offender. Counsel contends a 1972 plea of guilty to armed robbery and a 1969 plea of guilty to simple burglary cannot serve as the basis for a multiple offender charge because of lack of or defective Boykinization.
On June 19, 1969, ten days after the United States Supreme Court handed down its decision in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the defendant plead guilty to the offense of simple burglary (La. R.S. 14:62) before Judge C. William Bradley in the Twenty-ninth Judicial District.
In the multiple offender proceeding involved here, defendant admitted he was represented by counsel at the time of the 1969 plea and plead guilty because he was guilty and because his attorney advised him it would be advantageous to do so. The defendant contends he was not advised of any of his constitutional rights but admits he was not coerced into pleading guilty. There was no transcript of a colloquy between defendant and the judge in 1969; however, the clerk's minute entry does reflect that the defendant was represented by counsel when he plead guilty.
After conferring with Judge Bradley as to the 1969 guilty plea, the prosecutor and defense counsel stipulated that Judge Bradley had no independent recollection of the defendant's 1969 guilty plea but believed it was entered pursuant to the general procedure for entering guilty pleas employed in his courtroom at that time. The procedure was as follows: After a plea bargaining between the prosecutor and the defense counsel, they would inform the court of the bargained plea and the court would inform them of the sentence. The court would ascertain the defendant's age and sentence him in accordance with the agreement reached between the prosecutor and the defendant on the "bargained plea".
In Orleans Parish on October 24,1972, the defendant pled guilty to the offense of armed robbery in violation of La. R.S. 14:64. The transcript of the colloquy shows that before the defendant pled guilty the trial judge questioned the defendant as to whether he was voluntarily pleading guilty and whether he understood the constitutional rights he was thereby waiving. After advising the defendant on the waiving of his rights to trial by jury and to confront the witnesses against him, the trial judge advised the defendant of his right to remain silent, as follows:
BY THE COURT:
You also give up your right to remain silent, your right against self-incrimination. You are waiving that because you are incriminating yourself when you plead guilty. Do you understand?
BY DEFENDANT YARBROUGH:
Yes, your Honor.
The trial judge then explained other rights of the defendant and the effects of a plea of guilty.
In State v. Lewis, 367 So.2d 1155 (La.1979), the court, based on Boykin v. Alabama, supra, held that a 1970 guilty plea in a Louisiana Court could not be used to enhance punishment as a multiple offender unless the minutes or transcript of the plea affirmatively disclosed that the accused had waived his right to a jury trial, his right to confront his accusers and his privilege against self-incrimination. Subsequently, based on the United States Supreme Court opinion in United States v. Timmerick, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), this court in State v. Holden, 375 So.2d 1372 (La.1979) re-evaluated its position in the Lewis case, supra, and upheld the use of a federal conviction in a multiple offender proceeding even though the state did not affirmatively establish compliance with this court's three rights articulated waiver rule. Further, this case held at page 1376 that as to guilty pleas entered prior to December 8, 1971 (the effective date for Louisiana's three rights waiver rule under State ex rel Jackson v. Henderson, 260 La. 90, 255 So.2d 85 [1971] and LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 [1972]), a different standard of review would apply in determining the validity of the pleas as follows:

*510 "Accordingly, as to these convictions not governed by Jackson and LeBlanc, the state is required only to prove the conviction by a plea of guilty with representation by counsel. The defendant has the burden of proving that he did not waive his constitutional rights in making the plea, if the plea was taken subsequent to Boykin's requirement in this regard. Unless the colloquy at the time of the plea of guilty affirmatively shows substantial defect in this regard, the defendant will not be permitted to make any other collateral attack beyond the colloquy upon these otherwise-valid guilty pleas in the enhanced-punishment proceedings."
While reiterating the holding in the Holden case, supra, in State v. Bolton, 379 So.2d 722 (La.1979), at page 723, this court said:
"In Holden we held that, when the state intends to use a plea of guilty as a prior conviction in order to enhance punishment under La. R.S. 15:529.1:
(1) If taken before the decision in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709 23 L.Ed.2d 274 (1969), the plea is valid, if voluntary and with counsel, without any need for articulated waiver of the constitutional rights subsequently required by Boykin to be articulated and expressly waived in order that a plea be considered to be knowing and made with a full understanding of its consequences."
Moreover, under the holding of Holden and Bolton, supra, the defendant has the burden of proving that the plea was involuntary or, if taken subsequent to Boykin, that he did not waive the Boykin rights.
The defendant here relies on State v. Martin, 382 So.2d 933 (La.1980) to support his contention the 1972 guilty plea was fatally defective because the defendant was not adequately advised of his privilege against self-incrimination. The colloquy between the defendant and the trial judge in the Martin case was as follows:
"By pleading guilty you are also waiving your right to remain silent because you are not remaining silent when you plead guilty. Do you understand that?"
From the similarity of the language present here and in the Martin case, it can be technically argued that the judge's statements were insufficient to meet the requirements of Boykin. However, Martin dealt with a 1976 conviction. In its more recent decision, this court has moved away from its application as a rigid rule.
The defendant here is not contending his prior guilty pleas were not voluntarily entered, but rather, argues that he was not specifically informed by the trial judge at the time of entering the 1969 guilty plea of his right to trial by jury, his right to confront his accusers and his privilege against self-incrimination, therefore, these pleas cannot serve as a basis for charging him as a multiple offender.
In answer to a similar argument, Chief Justice Dixon, in State v. Halsell, 403 So.2d 688 (La.1981), said:
"While it is preferable for the trial judge to conduct a colloquy with a defendant to ascertain the validity of the plea, such a colloquy may not be indispensable as long as the record contains some other affirmative showing to support the plea."
A similar argument based on similar facts was previously presented to this court in State v. Johnson and Kelly, 404 So.2d 239, (La.1981).[3] In affirming the lower court's conviction of Kelly as a third offender, this court held:
"In all recent Louisiana felony cases, the record must affirmatively show that the defendant was adequately advised of the three rights prescribed by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1971). State v. Williams, docket No. 80-K-2345, [400] So.2d [868] (La.1981). In the case of pleas entered more than six years ago, the record must show only that the defendant voluntarily *511 pleaded guilty with a full understanding of `the connotation and consequences'. State v. Cusher, docket No. 80-K-2518, [400] So.2d [601] (La.1981); State v. Warren a/k/a Mason, docket No. 80-K-2375, [402] So.2d [662] (La.1981)."
As to the 1969 plea the record is clear the defendant was represented by counsel and he pled guilty because he was in fact guilty and because of the plea bargain offered, his attorney advised him it would be advantageous to do so. With respect to the 1972 plea, the defendant was advised by the trial judge of the consequences of his plea and of the constitutional rights he was waiving. From the record, it is clear the 1969 plea was voluntarily and intelligently entered. The record also shows the 1972 plea was voluntarily and intelligently given and under the more recent decision of this court[4] the defendant was adequately advised by the trial judge of the triad of rights he was waiving when the plea of guilty was entered.
For the reasons stated, therefore, the conviction and sentence of the defendant are affirmed.
DIXON, C. J., and DENNIS, J., concur with reasons.
CALOGERO, J., dissents and assigns reasons.
DIXON, Chief Justice (concurring).
I respectfully concur.
The October 24, 1972 plea of guilty to armed robbery in Orleans Parish was accompanied by a colloquy between the district judge and the defendant which is more complete than might appear from the portion quoted in the opinion. The judge informed the defendant that he had a right to trial by jury which he was waiving by pleading guilty; that he had a right to confront the witnesses against him and to cross-examine them, which he waived by pleading guilty; and that he also waived his right to remain silent ("your right against self-incrimination") by pleading guilty. The colloquy as a whole left little chance for misunderstanding concerning defendant's right against self-incrimination extending throughout a trial.
DENNIS, Justice, concurring.
I respectfully concur.
The record in this case demonstrates a knowing and intelligent waiver of the defendant's privilege against self-incrimination at trial.
The colloquy between the judge and the defendant, in pertinent part, reads as follows:
"BY THE COURT:
"Do you understand that you do have the right to trial, trial by a jury. By pleading guilty you waive that right. Do you understand that?
"BY DEFENDANT YARBROUGH:
"Yes, your Honor.
"BY THE COURT:
"You also have the right to see the witnesses who will testify against you. By pleading guilty you waive that right. You and/or your lawyer has the right to cross examine the witnesses against you. By pleading guilty you give up that right. Are you satisfied to give up that right by pleading guilty?
"BY DEFENDANT YARBROUGH:
"Yes, your Honor.
"BY THE COURT:
You also give up your right to remain silent, your right against self-incrimination. You are waiving that because you are incriminating yourself when you plead guilty. Do you understand that?
"BY DEFENDANT YARBROUGH:
"Yes, sir."
The explanation of the privilege against self-incrimination followed a careful explanation of the defendant's rights to a trial by jury and to confront and cross-examine the witnesses against him, which obviously could only have been exercised at trial. The explanation of the privilege against *512 self-incrimination informed the defendant that, by waiving it, he was giving up not only his right to remain silent, but also "your right against self-incrimination." Because of the context of the explanation, and the use of the words "self-incrimination" in addition to the right to remain silent, I believe that it is clear on the record that the defendant understood he was giving up his right to self-incrimination at trial as well as his right to remain silent during the guilty plea colloquy. Thus, the boykinization in this case is not fraught with the problems of those in State v. Martin, 382 So.2d 933 (La.1980), and State v. Robicheaux, 412 So.2d 1313 (La.1982), in which the defendants were only told that they had a "right to remain silent," leaving a record which was silent concerning their awareness of the privilege against self-incrimination at trial.
CALOGERO, Justice, dissenting.
I feel that I must dissent from the majority opinion because this case is indistinguishable from prior cases rendered by this Court which reach a contrary result.
The question of what constitutes a sufficient advisement of the privilege against self-incrimination in connection with entry of a defendant's guilty plea, is not a new issue to the Court. We have addressed this issue at least four times previously. State v. Age, 417 So.2d 1183 (La.1982); State v. Robicheaux and Powell, 412 So.2d 1313 (La.1982); State v. Hayes, 412 So.2d 1323 (La.1982); State v. Martin, 382 So.2d 933 (La.1980). When these cases are considered, along with the present one, the result is conflicting jurisprudence that confounds me.
In State v. Martin, supra, the first case to consider the issue, the transcript of the colloquy between the defendant and the trial judge during the guilty plea proceedings evidenced the following advisement concerning the defendant's privilege against self-incrimination:
Now, you also waive your right by not going to trial (sic), you waive your right to question the witnesses against you. By pleading guilty, you're also waiving your right to remain silent because you're not remaining silent when you plead guilty. Do you understand that?
Therein the Court noted that the privilege against self-incrimination, as opposed to the right to a jury trial and the right to confront one's accusers, was broader in scope than the other two because it was not only a right defendant had during trial, but it also applied to the interrogation and pre-trial stages as well. Thus the Court concluded that in making an intelligent choice to plead guilty and forego his right to a trial a defendant must be informed that he has a "right not to testify against himself at trial" and the record must evidence a waiver of that right. Since the transcript in Martin only established that the defendant waived his right to remain silent at the guilty plea proceedings but not at trial, the Court held that the guilty plea based on that inadequate advisement could not be used against the defendant.
We next considered this issue in State v. Robicheaux and Powell, supra, and State v. Hayes, supra, which were rendered simultaneously, with apparent inconsistent results. In Robicheaux the defendant had been advised:
You also give up the right to remain silent because by pleading guilty you're not remaining silent.
Therein the Court, relying on State v. Martin, held that since "the defendant was not informed of his right to stand trial without being forced to testify against himself" before entering his guilty plea, the plea could not be used against him for enhancement purposes.
In State v. Hayes, the defendant was advised:
You have the right to remain silent, if you choose; do you understand that right?
However, in Hayes the Court held that the advisement was sufficient and affirmed defendant's conviction as a multiple offender.
*513 More recently, in State v. Age, rendered just prior to the rendition of this opinion, the defendant had been informed:
By pleading guilty waives right against self-incrimination.
Therein, relying on both Martin and Robicheaux, the Court held that the guilty plea conviction could not be used to enhance defendant's punishment because, among other reasons,[1] defendant had not been adequately advised that he could stand trial and remain silent during the trial.
Finally, in the present case, this defendant was advised only:
You also give up your right to remain silent, your right against self-incrimination. You are waiving that because you are incriminating yourself when you plead guilty. Do you understand?
Now, a majority of this Court which rendered the previous four cases within the past two years (the last three of which were rendered within the last two months) holds this advisement is sufficient, without either overruling Martin or attempting to distinguish it.[2]
When originally confronted with this issue in State v. Martin, the Court was faced with the task of determining where to draw the line as to what constituted an adequate advisement of one's privilege against self-incrimination. In what I thought to be a well reasoned opinion, we determined that the line would be drawn at the point that the advisement of the right did not make clear to the defendant that he could remain silent at trial.[3] I adhered to that view in Robicheaux and expressed it again in dissenting in Hayes. I then authored Age, again reaffirming that position based upon the prior jurisprudence.
It then seemed to be the consensus of the majority of the Court that Hayes was distinguishable from Martin, Robicheaux and Age, because the advisement in Hayes did not contain the misleading information that the defendant was waiving his privilege against self-incrimination by pleading guilty, with the implication that the right only pertained to the plea phase of the proceedings. I dissented from that position being of the view that it was the absence of the information that defendant could remain silent at trial that rendered the advisement deficient, rather than just the addition of the comments that he was waiving his privilege against self-incrimination by pleading guilty.
In any event, whether or not Hayes is distinguishable from Martin, Robicheaux, and Age is not relevant in this case, because the advisement in this case is identical to the ones in the Martin, Robicheaux and Age cases, rather than the one in Hayes. Yet the majority reaches a contrary result.
There is an attempt, by the concurring Justices, to distinguish this case from the prior cases by pointing out that since the advice of defendant's privilege against self-incrimination followed the advice of other trial rights, defendant was aware of the fact that his non self-incrimination privilege applied during trial. However, it should be noted that in two of the prior cases the advisement of the defendant's privilege against self-incrimination, which was therein held defective, also followed advisements concerning the other trial rights. State v. Age, supra; State v. Martin, supra. Thus, not only do I not find this case distinguishable from Age and Martin, but I further believe that the advisement in this case is probably even more deficient than the one in Martin.
In Martin, as quoted above, as part of a single statement by the trial judge, the defendant was informed that he was waiving *514 certain rights by not going to trial; he was advised of his right to confront the witnesses against him, and of his privilege against self-incrimination. This Court found that advisement deficient because it did not clearly inform the defendant that he had the right to remain silent during his trial. In this case, the advice concerning the defendant's privilege against self-incrimination, although preceded by the advice of other trial rights, was separately and independently given as an individual right. Thus, it was not as clear in this case that the privilege applied at trial as well as at the guilty plea proceedings, as it was in Martin, where the advice of the privilege against self-incrimination was directly linked with that of other trial rights.
Therefore, in my view, the present case is indistinguishable from Martin, Robicheaux and Age and should be found to contain a deficient advisement of the privilege against self-incrimination or, if that is not the determination of the majority, Martin, Robicheaux and Age should be overruled. To do neither is to make it impossible for the bench and bar to discern the applicable jurisprudence in this narrow area.
Additionally, as concerns the 1969 plea, this plea was entered after the United States Supreme Court's Boykin decision but prior to this Court' decision in State ex rel Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (La.1971). However, the majority opinion incorrectly cites and relies on the portion of the Bolton decision which relates to pre-Boykin pleas rather than post-Boykin pleas.[4]
The majority also cites State v. Holden in support of the proposition that defendant can only show defect in his plea by a transcribed colloquy which evidences substantial deficiency in the advisement of his Boykin rights. Such a literal application of the Holden decision seems inappropriate in this case where there was no transcription of the proceedings and the defendant has introduced, in lieu of the transcript, a stipulation assented to by the state to the effect that the general procedure in that court in 1969 did not entail defendants' being advised of the three Boykin rights prior to taking their guilty pleas. Although under State v. Holden and State v. Bolton defendant has the burden, in this instance, to prove that he was not advised of his rights prior to entering his plea, it seems to me that this defendant has met that burden by this evidence.[5]
*515 For the foregoing reasons I dissent from the majority opinion.
NOTES
[*] Judges Thomas J. Kliebert and Robert J. Klees of the Court of Appeal, Fourth Circuit and Judge Ned E. Doucet, Jr. of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon and Associate Justices Pascal F. Calogero, Jr., James L. Dennis and Jack C. Watson.
[1] The appeal on the original trial was lodged in this court under Docket No. 81-KA-1078, the application for writs on the denial of the hearing was lodged under Docket No. 81-KA-1587 and the appeal on the hearing of the multiple offender charge was lodged under Docket No. 81-KA-15-0278. All three are consolidated here. Although more specifications of error were enumerated in his brief filed under Docket No. 81-KA-1039, defense counsel argued only assignment of error No. 6 relative to the denial of a motion to suppress evidence obtained in a warrantless search and under Docket No. 81-KA-1587 argued that the trial judge's use of a 1972 plea to armed robbery in Orleans Parish and a 1969 plea to simple burglary in the Twenty-ninth Judicial District Court, to establish the defendant as a multiple offender was error due to improper Boykinization. Thereafter, the defendant filed a pro se motion in which he argues matters dealing with the trial court's denial of his motion for a new trial insofar as it was based on newly discovered evidence and also argues the validity of some of the other assignments of error.

Under Article 916 of the Code of Criminal Procedure, the trial court may have been divested of jurisdiction at the time it adjudicated the defendant to be a multiple offender. However, defense counsel concedes the multiple bill would not have been handled better than it was and therefore urges this court to review the appeal in its proper posture. Also, defendant's motion for a new trial may be deemed untimely under Article 853 of the Code of Criminal Procedure. However, some of his arguments are based on what he contends is newly discovered evidence, others are relative to abandoned assignments of error and yet another alleges ineffective assistance of counsel. The writ application was granted in the interest of judicial efficiency in order for the defendant to have a prompt review of all issues raised in this case. Accordingly, all three proceedings will be treated as consolidated here and the arguments which the defendant grounds in fact already in the record will be treated as properly before the Court. As to those arguments raised on facts not now in the record, i.e., the alleged supplemental facts regarding his arrest and the consent of Ms. Scott to the search of her apartment and insufficient assistance of counsel, as well as most of the alleged facts raised in the supplemental facts filed on September 15, 1981 would require an evidentiary hearing. Therefore, the defendant's right to raise issues not dealt with in this consolidated appeal shall be preserved for a subsequent habeas corpus proceeding.
[2] State v. Pomes, 376 So.2d 133 (La.1979); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
[3] Justice Watson in a footnote made the following observation relative to State v. Martin, La., 382 So.2d 933 (1980). Martin was overruled in State v. Williams, 392 So.2d 448 (La.1980) which held a defendant could not collaterally attack his prior conviction in a trial under LSA-R.S. 14:95.1 for possession of a firearm by a convicted felon.
[4] See also State v. Cusher, 400 So.2d 601 (1981) and State of Louisiana v. McGinnis, La., 413 So.2d 1307 in addition to Johnson & Kelly, La., 404 So.2d 239.
[1] It was also determined in Age that the defendant was not adequately advised of his right to a jury trial.
[2] The four Justices who are members of the panel in this case are the very same four Justices who participated in and subscribed to the majority opinions in Martin, Robicheaux and Age.
[3] The trial court needs only to make it clear to a defendant, before accepting his guilty plea, that he has a right to a trial by jury and that during that trial, the defendant has a right to confront the witnesses against him and also the right to remain silent, or not incriminate himself.
[4] State v. Bolton, supra, provided, for pre-Boy-kin pleas:

[W]hen the state intends to use a plea of guilty as a prior conviction in order to enhance punishment under La. R.S. 15:529.1:
(1) If taken before the decision in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the plea is valid, if voluntary and with counsel, without any need for articulated waiver of the constitutional right subsequently required by Boykin to be articulated and expressly waived in order that a plea be considered to be knowing and made with a full understanding of its consequences.
If the plea was taken after Boykin but before December 8, 1971, the date of the finality of State ex rel Jackson v. Henderson, supra, Bolton provided:
The state may prove the conviction and its date by a certified copy of the minute entry (or an equivalent contemporaneously recorded or executed document) showing the plea and that the accused was represented by counsel. (The state must, of course, prove that the defendant in the plea and the present accused are the same person.)
The defendant has the burden of proving that the plea was involuntary or that (if taken subsequent to Boykin) he did not waive Boykin rights; he may do so in the enhancement proceedings only by the colloquy at the time of the plea of guilty, which must affirmatively show substantial defect in this regard.
[5] Bolton provides that non-Louisiana guilty pleas taken before Jackson and after Boykin be treated the same way regarding the respective burdens of the state and defendant before the plea can be used for enhancement purposes, that is, that the defendant can show that "he did not waive his Boykin rights ... only by the colloquy at the time of the plea of guilty, which must affirmatively show substantial defect in this regard." The issue of whether that burden should be applied literally, where there is no transcript of the proceedings (either because none was made or because it has been destroyed) for a non-Louisiana guilty plea, is presently before the Court in the case of State v. Smith, 415 So.2d 930, (La.1982) on rehearing.