KLIEBERT, Chief Judge.
The sole issue presented by this appeal is the validity of the trial judge’s ruling in denying the motion to suppress filed by the defendant. For the reasons hereafter stated we affirm.
Steven Michael Bodenheimer, the appellant, was charged by bill of information on August 23, 1991 with possession of marijuana in violation of LSA-R.S. 40:966. At arraignment on October 3, 1991 he pleaded not guilty. On June 2, 1992 the court heard and denied the defendant’s motion to suppress, following which the previous not guilty plea was withdrawn and a plea of-guilty as charged entered reserving his right under State v. Crosby, 338 So.2d 584 (La.1976) to seek appellate review of the denial of the motion to suppress.
After appropriate Boykinization proceedings the accused was sentenced to six months in the parish jail, suspended, placed on one year inactive probation, ordered to pay a fine of $150.00, a “drug fee” in the amount of $50.00 and court costs. The matter is now before us on appeal which asserts but one assignment of error, that of the denial of the motion to suppress mentioned at the outset.
Scott Kevin Morse, narcotics officer with the Jefferson Parish Sheriff’s Department, testified at the hearing that on July 16, 1991 in response to numerous complaints of suspected narcotics trafficking at defendant’s home at 831 Carnation Street he set up a surveillance of this residence. During *285 the surveillance four vehicles stopped, the drivers approached the door of the residence and, unable to receive an answer, departed. At around 2:50 P.M. the defendant, Steven Bodenheimer, and two women, one his sister and the other a friend named Amy Starnes, arrived and entered the residence together.
Officer Morse testified that, after the three people entered the home, he approached it with the intention of speaking to the defendant, whom he had recognized, speak to him about “the complaints made against him, offer him a chance to conduct a consent search, and clear the complaints against him.” As he was about to knock, Mr. Bodenheimer came out of the house. After the officer identified himself, Boden-heimer invited the officer into the residence.
After being in the home and seeing the two women, the officer told the defendant that he would like to speak to him in private, at which time the defendant asked him into the kitchen. There, according to the officer, in plain view was a tin box containing seeds and a smoking device. The appellant was then advised of his constitutional rights, the officer stated, and afterward signed a form to allow the search of the remainder of the residence. A K-9 dog was brought in to assist with the consent additional search which produced clear plastic bags containing a residue of suspected marijuana, currency, rolling papers, a scale, plastic baggies, a smoking device, and partially smoked hand-rolled cigarettes which were also seized. The officer denied making any threats or using any coercion whatever to get the accused to sign the forms.
The accused admitted that he invited Officer Morse into his home and admitted further inviting him into the kitchen. He denied, however, that the glass bottles containing the seeds and the smoking device were in the kitchen as testified to by the officer and stated that they were not on the kitchen table but were only found later in the bedroom after the search with, the dog. He denied that he had signed the consent-to-search form voluntarily, asserting that he did so only after Officer Morse had told him he would get a search warrant if he did not sign and that he, his sister and his friend would be taken to jail. He also stated that he made at least five telephone calls to an uncle who is an attorney, and only signed the consent-to-search form after he was unable to reach him.
Amy Victoria Starnes testified that she was in the living room while Messrs. Morse and Bodenheimer were in the kitchen. She stated that no threats were directed to her and that although the men had a conversation in the kitchen, she did not hear a discussion about a search warrant and “no, I didn’t hear that we would go to jail.”
With the above testimony before him, the trial judge ruled as follows:
“... the Court finds that Detective Morse approached Mr. Bodenheimer’s house after receiving complaints of drug trafficking at his house, he knocked on the front door and was invited in the house by Mr. Bodenheimer to discuss, as Detective Morse said, putting this matter to rest, or pursuing it as the case may be. While he was in the house, the Court believes the testimony of Detective Morse, that he saw the seeds, and the smoking device, and what not on the table of Mr. Bodenheimer. He asked him for a consent to search form, and he agreed to it.
I do not believe that Mr. Bodenheimer was coerced into signing the consent to search form. I see nothing improper about the actions of Detective Morse, and the motion to suppress is denied.”
The above ruling rests entirely upon a determination of credibility and the trial judge found the testimony of the officer to be more credible than that of the self-serving testimony of the accused whose testimony was not corroborated by that of his girl friend.
The actual trier of fact’s rational credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution. State v. Mussall, *286 523 So.2d 1305 (La.1988). The issue of consent is factual and may also be determined by judging the credibility of the witnesses. State v. Yarbrough, 418 So.2d 503 (La.1982). Thus, the trial judge’s determination of the voluntariness of consent is given great weight on appeal. State v. Ossey, 446 So.2d 280 (La.1984). We give great weight to the trial judge’s ruling and conclude that the assignment of error has no merit.
A review of the record reveals no errors patent and the conviction and sentence are, therefore, affirmed.

AFFIRMED.