436 So.2d 775 (1983)
STATE of Louisiana
v.
Elijah MURRAY.
No. KA 0339.
Court of Appeal of Louisiana, Fourth Circuit.
June 28, 1983.
*776 Philip E. O'Neill, Gretna, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for state of La.
Before SCHOTT, AUGUSTINE and CIACCIO, JJ.
SCHOTT, Judge.
Defendant has appealed from his conviction of attempted purse snatching in violation of LSA-R.S. 14:27(65.1). Following the jury verdict a multiple offender hearing was conducted and defendant was sentenced as a third felony offender to 12 years imprisonment at hard labor.
On April 25, 1982, while in a crowd leaving an event at the Superdome, the victim was shoved and observed the defendant's hand in her purse causing her to exclaim, "he's taking my purse." There were two other eyewitnesses to the incident, the victim's husband and her brother. The brother observed the defendant push past him and then he noticed defendant's arm reaching down into the victim's purse causing him to say, "he has got your purse." Immediately after hearing his brother-in-law and *777 wife shouting the victim's husband grabbed defendant and brought him to the police station. Based on this testimony defendant was convicted.

ASSIGNMENTS OF ERROR 1 AND 2
By these assignments, defendant argues that R.S. 14:65.1[1] is unconstitutionally vague and the offense described is the same as that contained in R.S. 14:65[2] pertaining to simple robbery, and, yet, it provides for a greater penalty. R.S. 14:65.1 withstands a vagueness attack since the statute sufficiently describes the unlawful conduct with enough clarity for any ordinary person with reasonable intelligence to understand it. State v. Gisclair, 363 So.2d 696 (La.1978). In regard to the suggestion that there is no justification for the greater penalty in R.S. 14:65.1 than in R.S. 14:65, the legislature's decision that purse snatching is more serious than simple robbery was reasonable considering the widespread exposure of the public to this crime, the personal nature of a wallet or purse, and the potential for loss of greater value. These assignments have no merit.

ASSIGNMENTS OF ERROR 3 AND 6
By these assignments, defendant argues that the wrong form of the bill of information was used, the bill charged only an offense of attempted theft, R.S. 14:27(67), it did not adequately set forth the crime of attempted purse snatching, R.S. 14:27(65.1), and the judge's charge and verdict sheet were deficient in dealing with attempted purse snatching rather than attempted theft. The bill states that the defendant "attempted to commit a theft by snatching a wallet valued at forty ($40.00) dollars belonging to Carmel Delany." The cover portion of this bill stated the statutory offense as "R.S. 14.27(65.1), Attempted Purse Snatching." The language of the bill satisfied the accused's constitutional right to be informed of the nature and cause of the charge against him and no prejudice to the defendant occurred because of the form of the bill. The charge and verdict sheet were likewise correct. These assignments have no merit.

ASSIGNMENT OF ERROR 4
By this assignment defendant contends the trial court erred in restricting defendant's cross examination of one of the state's witnesses. A review of the transcript of the subject cross-examination shows no abuse of the wide discretion granted a trial judge in such circumstances. Furthermore, defendant failed to object contemporaneously to this ruling as required by C.Cr.P. Art. 841. This assignment has no merit.

ASSIGNMENTS OF ERRORS 5 AND 9
These assignments deal with the state's rebuttal argument. Defendant urges that his Motion for Mistrial should have been granted because of the prosecutor's reference to "force and intimidation" in the rebuttal argument.[3] Defendant further *778 contends that the prosecutor used inflamatory language in the argument by making reference to the defendant's lack of evidence at trial. We are not convinced that the remarks, even if improper, influenced the jury and contributed to their verdict. State v. Vosloh, 387 So.2d 1174 (La.1980). These assignments have no merit.

ASSIGNMENTS OF ERROR 7 AND 8
These assignments deal with whether or not the record contains sufficient evidence to convict the defendant. Based upon a review of the record we conclude that any rational finder of fact reviewing the evidence in the light most favorable to the prosecution could have found the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Specifically, the record indicates that there was an attempt by defendant to take something of value contained in a purse from the person of another by snatching. The victim and her brother observed the defendant with his arm protruding from the victim's purse which contained a wallet, and the victim saw defendant's hand in her purse. The trial court, in its charge to the jury, defined snatching as "to grasp or seize hastily, eagerly or suddenly ... to make grasping or seizing motions." An examination of the record shows that the defendant attempted to quickly grab something in the victim's purse and his intention to permanently deprive can be inferred from these circumstances. R.S. 15:445. These assignments have no merit.

ASSIGNMENTS OF ERROR 10 AND 11
These assignments deal with the evidence presented at the multiple offender hearing. By assignment 11, defendant argues that the fingerprints of defendant did not match those offered into evidence from the arrest registers in case Numbers 266-568 and 272-712. The trial court's conclusions were based on Officer Comeaux's conceded expert testimony that there was no possibility that he could be mistaken in his opinion that all the prints matched. Defendant presented no contrary evidence. Assignment 11 has no merit.
Assignment 10 challenges the trial court's use of the two prior felony convictions as a basis for the finding that the defendant was a third felony offender under R.S. 15:529.1. A review of the transcript of the multiple offender hearing shows that the state introduced the following evidence of defendant's prior convictions.
(1) A 1978 robbery convictionthe Arrest Register, a minute entry, the bill of information, and a guilty plea form. (2) A 1979 robbery convictionthe Arrest Register, a transcript of hearing on the plea of guilty, a copy of the bill of information, the multiple bill and the minute entry therefrom, the docket master and the plea of guilty form. Defendant contends that the state failed to establish that these guilty pleas were constitutionally valid under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and State v. Santiago, 416 So.2d 524 (La.1982).
Under Boykin a guilty plea may not be accepted unless there is an affirmative showing that it is intelligently and voluntarily made, evidenced on review by a record which shows defendant's effective waiver of his rights against self-incrimination, his right to a trial by jury and his right to confront his accusers. Where defense counsel objects to the use of a guilty plea as a predicate to enhance a sentence, the state carries the burden to show the free and voluntary nature of a plea of guilty with an articulated waiver of Boykin rights. State v. Holden, 375 So.2d 1372 (La.1979). The purpose of the Boykin rule is to insure that the defendant has adequate information so that his decision to plead guilty is truly intelligent and voluntary. In this regard a defendant must be told what three basic rights at trial are guaranteed to him by the constitution. State v. Martin, 382 So.2d 933 (La.1980).
In the instant case defendant objected to the use of the minute entry and waiver form for the 1978 conviction and the adequacy *779 of the Boykinization transcript and waiver form for the 1979 conviction.
As to the earlier case, the following from the case of State v. Bolton, 379 So.2d 722 (La.1979) is applicable:
"(b) However, for pleas of guilty taken after December 8, 1971, in order to use the prior plea of guilty to enhance punishment in a subsequent proceeding, the state must, if objection is made to its voluntariness or to its being a knowing plea (due, e.g., to the absence of waiver of the Boykin rights), affirmatively show through (only) a contemporaneously recorded transcript that the plea was voluntary and made with an awareness of its consequences. State v. Lewis, 367 So.2d 1155 (La.1979); State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 (1972); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971)." (Emphasis added)
Thus, under Bolton the defense need only object to the use of a minute entry and the state was required to produce a recorded transcript of the Boykin colloquy. However, in the more recent case of State v. Bland, 419 So.2d 1227, 1223 (La.1982) the court suggests that unless the defense objects to the use of the minutes based on a contention that they are in error, the use of the minutes is appropriate to help establish a prima facie case of a knowing and voluntary waiver of Boykin rights with respect to a previous conviction used for enhancement.
However, the minute entry in question here[4] does not suffice because it fails to show affirmatively that proper Boykinization had taken place. Indeed, the language of this entry is more deficient than that in State v. Age, 417 So.2d 1183 (La. 1982).[5] For this reason we hold that the predicate for the multiple offender bill based on the defendant's conviction in the 1978 case is inadequate. We find no support for the state's contention that a guilty plea form alone is sufficient to satisfy its burden. State v. Holden, supra.
In regard to the predicate founded on the 1979 case, we have examined the transcript of the colloquy and the waiver of rights and guilty plea form. Although the colloquy does not include the specific language that defendant could remain silent at trial as discussed in State v. Martin, supra, and State v. Age, supra, the colloquy on this point is at least as complete as the one approved in State v. Yarbrough, 418 So.2d 503 (La.1982)[6] In all other respects, including as regards the waiver of jury trial, the transcript shows that the judge sufficiently questioned the defendant about his Boykin rights. The waiver of rights form repeats essentially the same rights explained in the colloquy transcript. Thus, we find that the guilty plea in the 1979 case was voluntarily and intelligently given and the conviction was properly used at the multiple offender hearing.
For the foregoing reasons, the defendant's conviction under LSA-R.S. 14:27(65.1) is affirmed. However, because of the lack of proof as to the 1978 guilty plea, the adjudication of defendant as a third felony offender is reversed, and the case is remanded to the district court for the defendant to be resentenced in accordance with law.
CONVICTION AFFIRMED: THIRD OFFENDER ADJUDICATION REVERSED, *780 REMANDED FOR RESENTENCING.
CIACCIO, J., concurs.
CIACCIO, Judge, concurring:
The question of what constitutes a sufficient advisement of the privilege against self-incrimination in connection with entry of a defendant's guilty plea, has been addressed on at least five occasions by the Louisiana Supreme Court. State v. Yarbrough, 418 So.2d 503 (La.1982); State v. Age, 417 So.2d 1183 (La.1982); State v. Robicheaux and Powell, 412 So.2d 1313 (La. 1982); State v. Hayes, 412 So.2d 1323 (La. 1982); State v. Martin, 382 So.2d 933 (La. 1980). When these cases are considered together, the following jurisprudential rule may be extrapolated: When interrogating a defendant as to his understanding of the Constitutional rights which are waived by pleading guilty, the trial judge must determine with certainty that the defendant understands that his right against self-incrimination, i.e. his right to remain silent, is in effect at the time of the guilty plea as well as at the time of trial, should the defendant choose to exercise his right to proceed to trial. While it is preferrable that the trial judge articulate that the right against self-incrimination is maintained "at trial", these words are not sacrosanct. If the overall colloquy between the trial judge and the defendant indicates that the defendant understood the full extent of his right against self-incrimination, then this requirement has been satisfied.
As pointed out by the majority, the colloquy in this case is similar to the one found sufficient in State v. Yarbrough, supra. After reviewing the colloquy as a whole, I find that defendant understood that his right against self-incrimination extended throughout a trial.
NOTES
[1] R.S. 14:65.1 reads:

§ 65.1 Purse snatching. A. Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
[2] R.S. 14:65 reads:

§ 65, Simple robbery. Simple robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
[3] The pertinent part of the rebuttal argument at question reads as follows:

"I want you to remember this: An attempt, and you have got to couple that with purse snatching. It's `the theft of anything of value contained within a pursewithin a purseor wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.' `Force, intimidation, or by snatching.'
BY R. O'NEILL:
Objection. Objection. May I approach the bench? Your Honor, the bill says by snatching only. It doesn't say force or intimidation. I ask for a mistrial. He can't do that at this late state.
Note my objection for the record.
BY THE COURT:
It's overruled.
[4] The subject minute entry in the 1978 case reads in pertinent part:

"The accused submitted to the Court a signed plea of guilty form in connection with his plea of guilty and the Court questioned the said Elijah Murray, after the minute clerk placed him under oath, regarding his plea of guilty, as noted by the court reporter.
[5] The entry discussed in Age, supra, simply stated that the court "interrogated the defendant as to whether he understood his constitutional rights, the court explained the same and the defendant answered in the affirmative."
[6] The portion of the colloquy pertaining to defendant's fifth amendment rights is as follows:

"Also, you're waiving your privilege against self incrimination because by pleading guilty you are incriminating your self, and by testifying this morning you're incriminating yourself. And you wish to waive the privilege against self incrimination?"