506 So.2d 1265 (1987)
STATE of Louisiana, Appellee,
v.
Charles "Bull" HARDEN, Appellant.
No. 18502-KA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
*1267 Stephen Katz, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Dist. Atty., and Lee Ineichen, Asst. Dist. Atty., Monroe, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr., and NORRIS, JJ.
JASPER E. JONES, Judge.
The defendant, Charles "Bull" Harden, pled guilty to manslaughter and aggravated burglary, violations of LSA-R.S. 14:31; 14:60.[1] The trial court sentenced him to consecutively serve 21 years at hard labor for the manslaughter conviction and 30 years at hard labor for the aggravated burglary conviction. He appeals the convictions and asserts that the sentences are excessive and in violation of LSA-Const. Art. 1, § 20 (1974).
We affirm.

FACTS
On April 13, 1985, the city police of Bastop, Louisiana, discovered the dead body of Cecil Johnson in his mobile home laying face up over a lounge chair in the living room. The victim had sustained a gunshot to the head and multiple knife-type wounds to the chest and abdomen. The victim's left hand had been severely cut resulting in his thumb and a finger being severed. The living room had been ransacked and there was blood in this area as well as in the bedroom/office area. A wall safe had been forceably removed from the bathroom wall and was found opened a short distance from the mobile home. The victim's wife related jewelry and cash had been taken and that her husband had kept a knife on a table near his lounge chair as well as a revolver under the chair, but these weapons were never found.
During the course of the investigation the police were informed that at approximately 2:00 a.m. that morning the defendant, who lived in a mobile home near the victim, had asked a friend to take him to a doctor as he had cut himself. The police also questioned two other witnesses, one of whom was the defendant's girl friend, who related the defendant had come to see them individually between 6:00 a.m.-7:00 a.m. on April 13, 1985, and told them that he had cut himself and that he thought that he had killed a man.
On April 14, 1985, the police made inquiries to area hospitals concerning anyone *1268 who might have been treated for a knife or gunshot wound. The police department of Crossett, Arkansas, reported that the defendant had been to the Crossett Hospital on April 13, 1985, at approximately 7:40 a.m., for treatment of a cut on his right hand and had left en route to the University Hospital in Little Rock, Arkansas, for surgery. The defendant received the surgery the next day. The physician who rendered the treatment reported the wound was inconsistent with the defendant's explanation that he had cut his hand on a car motor fan. It was the physician's opinion the defendant had cut his hand with a sharp instrument such as a knife. The defendant was arrested on April 16, 1985, as he was leaving the University Hospital.
The defendant was indicted by a grand jury on charges of first degree murder and aggravated burglary.[2] At the preliminary examination the contents of defendant's prior statements were established and revealed defendant had gone to the victim's mobile home to discuss late rental payments. The victim was the landlord of the defendant. The statements revealed the defendant had gone "berserk" when he cut his hand on a knife the victim had pulled on him. A fight ensued when the victim produced a .44 magnum revolver from under his chair and it went off during the struggle striking the victim in the head. Autopsy reports indicated numerous stab wounds to the victim's chest and abdomen were inflicted and the victim sustained a blow to the head that crushed a portion of the skull. In this statement the defendant had acknowledged he returned with an accomplice to the mobile home about fifteen minutes after the initial confrontation armed with a screwdriver, stole approximately $2,300 from the wall safe and the accomplice stabbed the victim after the victim moaned. The state subsequently filed notice of intent to seek the death penalty and a request for enhancement of sentence for use of a firearm in the commission of a felony in accordance with LSA-C.Cr.P. art. 893.1.[3] A plea bargain was agreed upon whereby the state would dismiss the first degree murder charge upon the defendant unconditionally pleading guilty to manslaughter and aggravated burglary. The defendant changed his plea to guilty of both charges and was sentenced as previously related. The defendant appeals the convictions and the sentences imposed asserting the following assignments of error:
Assignment of Error # 1The defendant was not afforded a complete explanation of his constitutional rights at the time he entered his pleas of guilt.
Assignment of Error # 2There was not a factual basis for the trial court to accept defendant's pleas of guilt.
Assignment of Error # 3The imposed sentences are unconstitutionally excessive and harsh

* * * * * *
Assignment of Error # 1Was the defendant's plea constitutionally valid?
A guilty plea will not be considered valid unless the plea was a free and voluntary choice on the part of a defendant. *1269 The decision to plead guilty will not be considered free and voluntary unless, at the very least, the defendant was advised of his constitutional rights against self-incrimination, to a trial by jury and to confront his accusers. There must also be an express and knowing waiver of those rights and the waiver must be on the record, which must unequivocally show that the waiver was free and voluntary. The preferred method of proof of a free and voluntary waiver is a colloquy between the judge and defendant. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Nuccio, 454 So.2d 93 (La.1984).
Were the guilty pleas constitutionally valid?
The defendant argues that the trial court failed to specifically advise of his "right to trial without being forced to testify against himself." The defendant also asserts that his pleas were not voluntary as he was never formally charged with manslaughter and never had the elements of this crime explained to him by the trial court. The defendant concludes by contending the record does not make the required constitutional showing that the pleas were made with a complete understanding of the charges and that the pleas were in violation of the constitutional requirements.
The record shows that at the hearing at which the guilty pleas were accepted the trial court and the defendant engaged in a colloquy which, in relevant part, shows the following:
MR. SPIRES: Next matter, your Honor, on the felony docket is a change of plea, uh, Charles Harden. Harden uh, is presently charged with first degree murder and aggravated burglary. I understand that uh, he is to plead to manslaughter and aggravated burglary.
MR. BRASS: Your Honor, that is correct. I represent Mr. Harden. Uh, we have discussed the matter with the district attorney's office. At this time, Mr. Harden will withdraw his plea of not guilty to first degree murder, tenative plea of guilty to manslaughter and aggravated burglary. [emphasis added]
. . . . . .
THE COURT: Will you state your name, please sir?
A. Charles Ray Harden.
THE COURT: I've been advised by you and by your attorney that you desire to plead guilty to manslaughter and aggravated burglary, is this what you want to do?
A. Yes sir.
THE COURT: I've also been advised that the State intends to ask me to impose the benefits of Article 893.1 which states the Court makes a finding that a firearm was used in the commission of a felony and when suspension of a sentence is not otherwise prohibited, the Court shall impose a sentence to which is not less than: (1) the maximum sentence provided by law in the same manner as provided in the offense, if the maximum sentence is less than five (5) years or five (5) years in the same manner as provided in the offense if the maximum sentence is five (5) years or more. Imposition or execution of sentence shall not be suspended and offender shall not be eligible for probation or parole. Do you understand what they are going to ask me to consider in imposing the sentence?
A. Yes.
THE COURT: Knowing that, do you still desire to plead guilty?
A. Yes.
. . . . . .
THE COURT: Now, you understand you do not have to plead guilty, Mr. Harden?
A. Yes sir.
THE COURT: Do you understand that if you plead guilty, you give up your right to go to trial and be tried by a Judge or by a jury?
A. Yes sir.

*1270 THE COURT: Do you understand that if you plead guilty, you give [sic] your presumption of innocence or the requirement that the State prove your guilt beyond a reasonable doubt?
A. Yes sir.
THE COURT: By pleading guilty you are giving up the right to confront the witnesses and to have your lawyer, Mr. Brass question them.
A. I understand.
THE COURT: By pleading guilty you are giving up your right to call witnesses on your own behalf at no cost to you.
A. Yes sir.
THE COURT: By pleading guilty you are giving up the right against self incrimination on your right to remain silent, [emphasis added]
A. Yes sir.
. . . . . .
THE COURT: Do you want to give up your right to trial by a judge or by a jury?
A. Yes sir.
THE COURT: Do you want to give up your presumption of innocence?
A. Yes.
THE COURT: Do you want to give up the requirement that the State prove your guilt beyond a reasonable doubt?
A. Yes.
THE COURT: Do you want to give up your right to confront the witnesses and have your lawyer, Mr. Brass question them?
A. Yes sir.
THE COURT: Do you want to give up your right to call witnesses on your own behalf at no cost to you?
A. Yes sir.
THE COURT: Do you want to give up your right against self incrimination or your right to remain silent? [emphasis added]
A. Yes sir.
. . . . . .
THE COURT: Did anyone talk you into this or force you to do this?
A. No sir.
THE COURT: Has anyone promised you any specific sentence or any leniency to get you to do this?
A. No sir.
THE COURT: Did uh, Mr. Brass go over with you the maximum sentence that you could face as a result of entering this plea?
A. I quite don't remember whether he did or not. I think he did, but I'm not for sure.
THE COURT: Whoever commits manslaughter should be imprisoned at hard labor for not more than twenty-one (21) years. Do you understand that?
A. Yes.
THE COURT: And the aggravated burglary, is that what it was?
A. Yes sir.
THE COURT: Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one (1) nor more than thirty (30) years, do you understand that?
A. Yes sir.
THE COURT: Facing a total of fifty-one (51) years penetentary [sic], do you understand that?
A. Yes sir.
THE COURT: And knowing that, do you still desire to plead guilty?
A. Yes sir.
. . . . . .
THE COURT: The Court finds Mr. Harden understands his rights explained to him by the Court, and he waives those rights....
The record also shows that at the preliminary examination reference was made to two prior statements made by the defendant where he admitted going "berserk" and killing the victim and burglarizing the mobile home while armed with a dangerous weapon. At the hearing on the pleas the defendant admitted killing the victim and stabbing the victim's body in a fit of passion and subsequently burglarizing the scene while armed with a screwdriver.
We conclude that this assignment of error is without merit. It is evident that the *1271 colloquy establishes the defendant was properly and adequately advised of his constitutional rights, in addition to the possibility of an enhanced sentence due to the use of a firearm, and he freely, voluntarily and knowingly agreed to a waiver of these rights prior to the trial court accepting the guilty pleas. Although the trial court did not specifically advise the defendant of his right against self-incrimination at trial the explanation of this privilege followed a careful review of the defendant's right to a trial by jury and to confront witnesses and have his lawyer question them. The trial judge's advice to the defendant on self-incrimination is located following questions framed with specific reference to the trial, and this circumstance creates the unequivocal connotation that the right against selfincrimination was also available to defendant at trial. In its more recent decisions the Louisiana Supreme Court has moved away from a rigid application of the Boykin rule to an analysis of whether the record shows a defendant was adequately advised by the trial court of the relevant constitutional rights. State v. Yarbrough, 418 So.2d 503 (La.1982). The concurring opinions by Chief Justice Dixon and Justice Dennis in the cited case leave no doubt that the context of the colloquy in the instant situation, where the explanation used the words "self incrimination" in addition to the right to remain silent, establishes the defendant was advised he was giving up his right to remain silent at trial as well as his right to remain silent during the guilty plea hearing.
We also find no merit in the defendant's assertion that the trial court erred in not specifically advising him of the elements of the crime of manslaughter or that he did not understand the nature of this crime. The grand jury indictment for first degree murder, the defendant's statements reviewed at the preliminary examination, the detailed review of the defendant's description of the crimes in his statement given by the assistant district attorney at the hearing on the pleas in response to the trial judge's request for the facts of manslaughter, defendant's admissions at the hearing on the pleas and the fact of the plea bargain agreement between the district attorney and the defendant and defendant's counsel all show that the defendant was aware of the nature of the crime in that the victim was killed either in the heat of passion and/or without the intent to cause death or great bodily harm. Cf., State v. Thomas, 434 So.2d 530 (La.App. 2d Cir.1983).
We further note that an amendment to the indictment or the filing of a new bill of information was not necessary as manslaughter, to which the district attorney agreed to permit the defendant to plead, is a lesser and included crime of first degree murder for which the defendant was indicted. LSA-C.Cr.P. arts. 814 A.1; 558.[4]
Assignment of Error # 2Did the trial court err in accepting the pleas as the underlying factual basis was inadequate?
The defendant argues that he never admitted his guilt to manslaughter but maintained a claim of self-defense. He also asserts he was not made aware of the elements of this crime. As such, it is contended that the guilty plea to manslaughter should not have been accepted by the trial court as the underlying factual basis is inadequate to uphold the convictions.
The record shows that the defendant responded to the trial court that he was protecting himself when he killed the victim. The subsequent colloquy, in relevant part, *1272 reveals the following interrogation by the trial court:

. . . . . .
THE COURT: Now, do you understand that on the manslaughter charge the jury might believe that this was in self defense? If they believed your story one hundred percent?
A. I am so tired, I just want to go on and get it over with.
THE COURT: Well, it won't be over with, that is what I'm saying. It will be a long sentence imposed, and I don't want you to plead guilty to something that you did not do. If the jury accepted your version of what happened, that there was a struggle, that he started it and you were defending yourself, that they could find you not guilty.
A. Yes sir.
THE COURT: Do you understand that by pleading guilty, you are going to give up that right to have that jury consider that?
A. Yes sir.

. . . . . .
We determine that this assignment of error is meritless as it is contrary to the facts and the law. As a factual matter, the record shows the defendant was fully apprised of the consequences of pleading guilty and waiving the possibility that a jury might find him not guilty of manslaughter. Such an unequivocal response to the trial court's questioning cured the defendant's earlier ambivalence and shows that his resulting plea was knowing and voluntary. It is not a constitutional prerequisite that the defendant specifically admit his guilt in order for the plea to be valid. State v. Thomas, supra. As we have determined the guilty pleas were valid, the defendant has waived any right to question the merits of the state's case and the factual basis underlying the convictions. State v. Bourgeois, 406 So.2d 550 (La.1981). For the reasons given in the previous assignment of error we determine the trial court was not required to specifically advise the defendant of the elements of manslaughter and the defendant was aware of the nature of this crime.
Assignment of Error # 3Are the sentences excessive?

LAW ON THE REVIEW OF CRIMINAL SENTENCES
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ den., 439 So.2d 1074 (1983). The articulation of the factual basis for a sentence is the goal of article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with article 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. McGhee, 469 So.2d 1051 (La. App. 2d Cir.1985).
Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. 1983), writ den., 435 So.2d 433 (La.1983). The trial judge has wide discretion in the *1273 imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, supra; State v. Hammonds, supra.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ den., 452 So.2d 695 (La.1984). As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pleaded offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through plea bargain and the offense involves violence upon a victim. State v. Richardson, 446 So.2d 820 (La. App. 2d Cir.1984).
A plea bargain which brings about substantial benefits to a defendant is a legitimate consideration in sentencing. State v. Winzer, 465 So.2d 817 (La.App. 2d Cir.1985).

Are the sentences excessive?
The defendant argues that the trial court did not give enough weight to the mitigating circumstances surrounding his limited education, his support of several children, his gainful employment and his non-violent criminal history. He also asserts that he is effectively "banished from free society forever without an admission of guilt or conclusive establishment of defendant's factual guilt."
The record shows that the victim was shot in the head at very close range, sustained a crushing blow to the skull, was stabbed repeatedly in the chest and abdomen and a thumb and a finger on his left hand were severed. Portions of the deceased's mobile home were ransacked and approximately $2,300 in cash was stolen. The trial court ordered a presentence investigation report after accepting the defendant's pleas to manslaughter and aggravated burglary. This report reveals the defendant was convicted of theft on June 25, 1976 and sentenced to serve four months in jail. He was convicted of middle grade theft on June 27, 1977, and sentenced to two years at hard labor. On January 7, 1981, he was convicted of a DWI offense. Between September 5, 1980, and May 22, 1981, the defendant was convicted seventeen times for issuing worthless checks. On September 2, 1981, he was convicted of theft. On February 21, 1984, he was convicted of simple assault (reduced from aggravated battery where he threatened an individual with a shotgun). The report also shows that the defendant completed the eighth grade, is unmarried with eleven children, and was gainfully employed as a treetrimmer and pulpwood hauler at the time of his arrest.
At the sentencing hearing the trial court ruled that a firearm was used in the commission of the manslaughter of the victim. The trial judge noted the defendant had no juvenile record, a very extensive misdemeanor record and was a fourth felony offender. The trial court found as mitigating factors the defendant's limited education, his common-law relationship, the fact that he was the father of several children and the defendant's employment at the time of his arrest on the instant offenses.[5] As aggravating considerations the trial court noted the defendant's age of 27, the fact that his past involvements with the criminal justice system had been to no avail and the fact that the defendant was not eligible for probation. The court also noted that this was a very violent offense resulting in the mutilation of the victim. The court concluded by noting that a firearm was used in the manslaughter conviction *1274 and sentenced the defendant to twenty-one years at hard labor. On the aggravated burglary conviction the court sentenced him to thirty years at hard labor. These sentences were to be served consecutively.
We conclude the imposed sentences are not excessively harsh or in violation of LSA-Const. Art. 1, § 20 (1974). The trial court adequately complied with LSA-C. Cr.P. art. 894.1 in particularizing the sentences to the defendant's circumstances and did not abuse its discretion in failing to give more weight to the mitigating circumstances. The defendant's status as a fourth felony offender and his extensive criminal record are factors showing that the trial court was justified in imposing the maximum sentences allowed by law. Cf., State v. Walton, 440 So.2d 850 (La.App. 2d Cir.1983), writ den., 443 So.2d 1121 (La. 1984). In addition, the heinous manner in which these crimes were committed establishes that the defendant's guilty pleas to manslaughter and aggravated burglary do not adequately describe his conduct. The benefit received by the defendant in the plea bargain amounts to a significant reduction in potential exposure to punishment as he avoided the possibility of death or life imprisonment without the benefit of parole, probation or suspension of sentence. Cf., State v. Richardson, supra; State v. Winzer, supra. It is evident that the violence surrounding these crimes justifies the trial court's decision to have these maximum sentences served consecutively as the record supports the conclusion that the defendant is an unusual risk to public safety. Cf., State v. Rogers, 468 So.2d 1357 (La.App. 1st Cir.1985); LSA-C.Cr.P. art. 883.[6] The fact that the sentences of fifty-one years at hard labor will effectively "banish" the 27 year old defendant from society is not sufficient, in and of itself, to render the sentences excessive under the facts of this appeal. Cf., State v. Parrish, 463 So.2d 794 (La.App. 2d Cir.1985).

CONCLUSION
The convictions and sentences are AFFIRMED.
NOTES
[1] § 31. Manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
. . . . .
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
60. Aggravated burglary
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.
[2] LSA-R.S. 14:30 First degree murder:

A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
. . . . . .
C. Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury.
[3] Art. 893.1. Use of firearm in commission of a felony; sentencing

When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.
[4] Art. 558. Plea of guilty of lesser included offense

The defendant, with the consent of the district attorney, may plead guilty of a lesser offense that is included in the offense charged in the indictment.
Art. 814. Responsive verdicts; in particular
A. The only responsive verdicts which may be rendered when the indictment charges the following offenses are:
1. First Degree Murder: Guilty. Guilty of second degree murder. Guilty of manslaughter. Not guilty.
[emphasis added]
[5] The trial court related that the defendant was the father of three children but the presentence report specifies he has eleven children. This factual difference does not alter our decision as to the excessiveness of the imposed sentences.
[6] Art. 883. Concurrent and consecutive sentences

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.