746 So.2d 41 (1999)
STATE of Louisiana, Appellee,
v.
Paul V. GAAR, Appellant.
No. 32,243-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
*42 Louisiana Appellate Project by J. Wilson Rambo, Counsel for Appellant
Richard Ieyoub, Attorney General, Walter E. May, Jr., Dist. Atty., Gary D. Nunn, Asst. Dist. Atty., Counsel for Appellee.
Before CARAWAY, KOSTELKA and DREW, JJ.
DREW, J.
Paul V. Gaar pled guilty to DWI, Third Offense, a violation of La. R.S. 14:98 and, pursuant to State v. Crosby, 338 So.2d 584 (La.1976), reserved his right for appellate review of an adverse ruling on his Motion to Quash a predicate offense. Defendant assigned as error the trial court's denial of his Motion to Quash which contended that a predicate offense on which this conviction is based was constitutionally infirm. Finding no merit to the appeal, we affirm the conviction. The sentence is amended and affirmed.

BACKGROUND
The predicate offenses were DWI convictions on December 9, 1992, in docket No. 29,909 in Jackson Parish and on March 12, 1997, in docket No. 96-10222 in Natchitoches Parish. On September 18, 1998, defendant filed a Motion to Quash the 1997 predicate because the trial court conducted some of the colloquy out of the presence of Gaar's court-appointed lawyer.
At the March 12, 1997 guilty plea in Natchitoches Parish, the ADA informed the court, even though defense counsel was not present, they could proceed because the disposition was in defendant's favor. The ADA, the defense counsel and Gaar had discussed the charges against Gaar prior to court and agreed to amend the DWI, 3rd offense to DWI, 2nd offense. Gaar confirmed to the trial court that was his understanding and agreement. The judge explained that he was required to ascertain Gaar's understanding through questioning. Gaar stated to the court that he was willing to answer the questions. The trial court explained that by pleading guilty, Gaar was waiving the rights to a trial and to have witnesses to any facts give sworn testimony before the court and defendant. The trial court read the definition of DWI, 2nd offense and the penalties therefor and informed Gaar that if he pleaded guilty, his penalty would be fine and costs totaling $788.50 and six months in jail. Except for 15 days in jail or 30 days community service, the jail sentence would be suspended. Defendant would also be required to complete driver education and substance abuse courses. To insure that Gaar knew about the progressive nature of the offense, the trial court informed defendant of the penalties for 3rd and 4th DWI offenses. Gaar responded that his attorney had discussed those matters with him and that he had sufficient time to talk to his attorney before entering the plea. Gaar stated he understood that the state had to prove his guilt beyond a reasonable doubt and that he was giving up his right of self-incrimination with respect *43 to his offense. Further, Gaar declared that no one forced him to plead guilty, that he was 36, and that he attended school to the 12th grade. Gaar reported he had worked offshore and currently worked as a licensed practical nurse. The trial court explained that he had to determine that Gaar had sufficient age and education plus life and work experience to understand what he was doing.
Then the trial judge told Gaar that the court had to question the defense counsel before taking Gaar's guilty plea. When Gaar's attorney appeared in the court room, the judge asked defendant if his lawyer had reviewed with him the questions the court asked Gaar during his lawyer's absence from the courtroom. The defendant replied affirmatively. The defense counsel declared to the court that all the elements for DWI 2nd were present, that counsel had informed defendant of his rights to trial and to counsel and to his privilege against self-incrimination along with the right to plead not guilty. Further, the lawyer stated to the court that Gaar wished to plead guilty of his own free will and with full knowledge of the consequences. Gaar then said to the court that he wished to plead guilty. The trial court repeated the sentence to be imposed and set the matter for sentencing.
At the hearing on the motion to quash, defense counsel recounted that, at the 1997 guilty plea in Natchitoches Parish, Gaar's court-appointed counsel had discussed the matter with the ADA and agreed to tender a guilty plea. Gaar's contention at the hearing was that the trial court proceeded taking the guilty plea without the presence of the defense counsel and without explaining the dangers and disadvantages of proceeding without his lawyer's presence.
In denying Gaar's motion to quash, the trial court observed that, although the defense counsel was not present during the entire 1997 guilty plea colloquy, the judge thoroughly discussed the matter with the defense lawyer and questioned the attorney and Gaar before accepting the plea. Concluding that any deficiency in the 1997 proceedings was corrected by the discussion between the defense lawyer and the court, the trial court denied the motion to quash.
In the present matter, Gaar was sentenced to serve 18 months at hard labor plus pay a fine of $500 and costs. Failure to pay the fine would result in an additional 45 days in jail. The trial court directed that Gaar receive credit for time served awaiting disposition. The sentence was made concurrent with any other sentences Gaar was required to serve. All but six months of the sentence was suspended and defendant was placed on two years' supervised probation, which was subject to a number of special conditions. The trial court also informed Gaar that he had three years from finality of the judgment to seek post conviction relief. Gaar's counsel made an oral motion for appeal and designated the entire record for the appeal.

DISCUSSION
In his trial and appellate briefs, Gaar argued that his 1997 guilty plea to DWI, 2nd offense was defective and could not be used as a predicate offense to support this DWI, 3rd offense conviction because the record did not show that the trial court affirmatively ascertained that defendant had a full understanding of what the 1997 plea meant. When a misdemeanor guilty plea is used as a basis for actual imprisonment, enhancement of actual imprisonment or conversion of a subsequent misdemeanor into a felony, the trial judge must have informed the defendant that, by pleading guilty, he waives his privilege against compulsory self-incrimination; his right to trial and jury trial where applicable; and his right to confront his accusers. The trial court must also make sure that the accused has a full understanding of what the plea connotes and of its consequence. State v. Jones, 404 So.2d 1192 (La.1981).
*44 Gaar's rights against self-incrimination, confrontation and trial were all discussed during the colloquy. The trial court informed Gaar of the DWI 2nd, 3rd and 4th penalties, examined his education and work experience, noted the fact that Gaar had been adequately advised by his attorney concerning his rights to trial and counsel, plus his rights against self incrimination, and to plead not guilty. The defense attorney stated that Gaar wished to plead guilty of his own free will and with full knowledge of the consequences. There was no contemporaneous objection to the procedure used at the hearing by Gaar or his attorney. Gaar's complaints that the trial court did not adequately inquire into his education and understanding is belied by the record and is without merit. The transcript of the 1997 plea demonstrates that the trial court specifically ascertained that Gaar had a full understanding of the plea and its consequences.
Both at the motion to quash and on appeal, defendant complained that the trial court proceeded with the 1997 guilty plea without the presence of Gaar's court-appointed attorney and without counseling Gaar as to the dangers of proceeding without counsel. Gaar, his attorney, and the prosecutor met before court and made an agreement to reduce the charge against Gaar from DWI 3rd to DWI 2nd. While the defendant's lawyer was in a meeting with another trial judge, a portion of the colloquy took place in the courtroom, an unfortunate and regrettable procedure. However, the record shows that no incriminating or inculpatory information was obtained from the defendant during his lawyer's absence from the courtroom. When the lawyer appeared, the trial court made an adequate effort to determine from both the defendant and the defense counsel that Gaar freely and voluntarily entered a guilty plea with full knowledge of its ramifications. Only then did the trial court take the guilty plea from Gaar in the presence of his lawyer.
In State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367, a suspect was interrogated by police after counsel had been appointed. The supreme court ruled that once right to counsel attaches it applies at all critical stages of the proceedings. However, if a defendant does not assert his previously attached right to counsel, the state can elicit statements from the defendant if the defendant makes a knowing, intelligent, voluntary and express waiver of the right to counsel. Carter's statement was not suppressed because the state proved he did not invoke his previously attached right to counsel and he made a knowing, intelligent and voluntary waiver of his right to counsel. Carter, supra, is distinguishable from this matter in which Gaar was represented by counsel. While the trial court briefly did question Gaar without his lawyer, confirmation of the information was elicited from the defense counsel and the guilty plea was taken in the presence of Gaar's attorney.
The unrepresented guilty plea to a felony in State v. Lawrence, 600 So.2d 1341 (La.App. 1st Cir.1991) is distinguishable from Gaar's guilty plea to a misdemeanor with representation by counsel. More stringent standards for waiver of counsel apply to felony guilty pleas than to misdemeanor pleas. A determination of the defendant's understanding of waiver of counsel for a guilty plea to an uncomplicated misdemeanor requires less judicial inquiry than a waiver of counsel for a felony trial. Whether an accused knowingly and intelligently waived counsel depends on the facts and circumstances of each case. State v. Strain, 585 So.2d 540 (La.1991). The predicate in Lawrence, supra, was defective because the trial court did not make the defendant aware of the dangers of self-representation and the record did not establish that defendant knew what he was doing. In contrast, this record shows that Gaar, although briefly unaccompanied by his attorney in the courtroom, was represented and made a knowing and intelligent misdemeanor guilty plea with full *45 knowledge of its consequences with benefit of counsel. There is no suggestion in the record that, had the court advised him of any danger of answering questions without his lawyer, Gaar would not have consented to respond to the judge's questions. No prejudice occurred. Gaar's counsel assisted him and was present at the guilty plea.
Gaar also asserted that the trial court failed to advise him of his right to remain silent at trial.[1] In the course of a manslaughter colloquy in State v. Harden, 506 So.2d 1265 (La.App. 2nd Cir.), writ denied, 512 So.2d 438 (La.1987), the trial court said "by pleading guilty you are giving up the right against self incrimination on your right to remain silent." This court held that, although the trial court did not specifically advise the defendant of his right against self-incrimination at trial, the explanation followed questions specifically referring to trial and conveyed that the right against self-incrimination was available at trial. In the 1997 misdemeanor plea, Gaar said he understood he was giving up his right to trial and to have sworn testimony of witnesses. After ascertaining that Gaar understood the prosecution had to prove his guilt beyond a reasonable doubt, Gaar affirmatively responded that he understood that "by your plea you give up your right against self-incrimination with respect to this offense." The context of Gaar's colloquy both with and without his lawyer establishes he gave up his right against self-incrimination both at trial and at the guilty plea. This complaint is without merit.

ERROR PATENT
Gaar entered his guilty plea to DWI, 3rd offense after the effective date of the enactment of La.C.Cr.P. art. 556.1, which mandates that the court must advise the defendant of the nature of the charge and the mandatory minimum and maximum penalties. In both the guilty plea colloquy and the signed form in the record (Determination of Understanding of Constitutional Rights, Nature of Charge and Consequences of Guilty Plea), the trial court failed to advise Gaar of the mandatory minimum sentence for this offense. The sentencing range is imprisonment with or without hard labor from one to five years, at least six months of which shall be without benefit of probation, parole or suspension of sentence and a fine of $2000. La. R.S. 14:98(D). However, in this matter, Gaar received an agreed-upon sentence which was recited in open court and included on the signed form introduced prior to Gaar's pleading guilty. Under these circumstances, the error is harmless. Additionally, defendant does not assert nor does the record reveal that the plea was entered unknowingly or involuntarily.
An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Where an appellate court can determine indigency from the record, such a penalty may be *46 treated as error. This record clearly shows that the defendant was represented by the Indigent Defender Board at the trial and by the Louisiana Appellate Project on appeal. Therefore, the sentence is amended to delete the portion of the sentence providing for incarceration in the event of default of payment of the fine and costs.
Although a defendant is presumed indigent if he is unable to afford counsel, this presumption may be rebutted with evidence placed into the record establishing the defendant's ability to pay the fine. We note that under La. R.S. 15:574.4(K), payment of a fine may be made a condition of parole by the parole board. Further, La.C.Cr.P. art. 886 permits the state to enforce collection of a fine and costs in the same manner as a money judgment in a civil case. State v. Wilkerson, 29,979 (La. App. 2nd Cir.10/29/97), 702 So.2d 64.

DECREE
For the reasons stated above, Paul V. Gaar's conviction is affirmed. The sentence is amended to delete the default time; as amended, it is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Gaar relied upon State v. Martin, 382 So.2d 933 (La.1980), overruled on other grounds by State v. Williams, 392 So.2d 448 (La.1980). In State v. Lott, 29,082 (La.App. 2nd Cir.1/22/97), 688 So.2d 608, writ denied, 97-0711 (La.9/26/97), 701 So.2d 979, this court explained the Martin guilty plea was invalid because the trial court advised defendant a guilty plea was a waiver of his right to remain silent because a person does not remain silent when pleading guilty. That advice did not specifically state "at trial." In State v. Robicheaux, 412 So.2d 1313 (La.1982), the court vacated an enhanced sentence, since the predicate guilty plea was invalid; the trial judge had stated that the defendant was giving up the right to remain silent but did not say "at trial." In State v. Age, 417 So.2d 1183 (La. 1981), the court found that a signed form which stated defendant waived the right against self-incrimination was inadequate advice of the right to remain silent at trial. Both Age and Robicheaux, supra, followed Martin, supra and were cited by Gaar. Although never expressly overruled on this point of law, Martin, supra, has been called into question and distinguished many times by the appellate courts of this state. In State v. Yarbrough, 418 So.2d 503 (La.1982), the supreme court pointed out that the court had moved away from Martin, supra. This court made the same observation in State v. Harden, 506 So.2d 1265 (La.App. 2nd Cir.1987).