432 So.2d 1021 (1983)
STATE of Louisiana
v.
Morris PATTERSON.
No. 82 KA 1087.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
*1022 Joseph W. Cole, Jr., Asst. Dist. Atty., Ventress, for plaintiff-appellee.
Thomas A. Nelson, Public Defender, New Roads, for defendant-appellant.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
On October 2, 1981, Morris Patterson (defendant) was charged with violating La.R.S. 40:966[1], in that he produced a controlled, dangerous substance, to-wit: marijuana. After trial by jury on May 18, 1982, defendant was found guilty and sentenced to five years at hard labor. He has appealed both his conviction and sentence.
The background facts indicate that Gordon Hebert, Chief of Detectives for the Sheriff's Office of West Baton Rouge Parish, believed that defendant might have information concerning certain house burglaries that had occurred in his Parish. A confidential informant told Hebert that defendant had some shotguns which had been taken during these burglaries. Defendant lived near the West Baton Rouge-Pointe Coupee Parish line, but within Pointe Coupee Parish.
Gordon Hebert notified Jennings David, a deputy sheriff for Pointe Coupee Parish, that he wanted to question defendant and sought Deputy David's assistance. David agreed to meet him at defendant's residence. Hebert arrived first, knocked on defendant's door, and was greeted by Mrs. Patterson, who told him that her husband was in the back feeding his hogs, and she proceeded to summon him. About the time that defendant and Hebert began talking, David arrived on the scene. During the course of the discussions, both Hebert and David noticed what they suspected to be marijuana plants drying on a scaffold near defendant's house. David testified that defendant went over to the scaffold, got the marijuana plant and handed it to him, whereupon he told defendant that possession of marijuana was against the law. David then arrested defendant and advised him of his rights.
Both officers indicated that they saw plants in various stages of growth in the cornfield next to defendant's house and also indicated that marijuana in various stages of development was seen all over the premises. David testified that he advised defendant that he would have to return to the Pointe Coupee courthouse and obtain a search warrant to search the premises, but offered defendant an opportunity to waive a search warrant. Defendant voluntarily signed a written waiver of search warrant and then David proceeded to search the entire premises, finding marijuana "all over the place" in all stages of cultivation. He summoned other deputies who arrived on the scene and borrowed a tractor from an adjacent property owner.
The officers gathered growing plants and drying plants and, during the course of the next four hours, accumulated at least a ton of suspected marijuana. Most of it was burned; however, seven bags were prepared with samples taken from various parts of the premises and sent to the Louisiana State Police crime lab for analysis. The analysis for all seven samples was positive for marijuana.
*1023 Defendant has urged four assignments of error. Assignment numbers 1 and 3[2] deal basically with the same argument that the trial judge erred in denying defendant's motion to suppress the various plants believed to be marijuana. Defendant submits that Hebert and David should have obtained a search warrant prior to searching and seizing the suspected plants and that by failing to do so, the search and seizure was illegal. Hebert and David testified that they went to defendant's house in connection with Hebert's investigation of certain house burglaries, based on Hebert's information that defendant had in his possession certain shotguns that had been stolen. It was in the course of the officers' conversation with defendant, wherein they learned that defendant did not have any shotguns, that they saw the suspected marijuana hanging from a scaffold near defendant's house. Two issues are presented in this assignment. The first is whether the search and seizure was justified under the "plain view" doctrine. The second is whether the defendant consented to the search and seizure.
The evidence in this case overwhelmingly supports the fact that officers Hebert and David were lawfully on defendant's property, seeking information about house burglaries. Strictly through innocent happenstance, the officers noticed marijuana plants drying on a scaffold, while they were talking to defendant. It is well settled that, under certain circumstances, law officers may seize evidence in plain view without a warrant. This is the "plain view" doctrine. Under this rule, it has long been settled that objects which are in plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927).
David testified that after he advised defendant that he was under arrest for production of marijuana, defendant freely and voluntarily consented to a search of his premises and signed the waiver of search warrant form. Hebert verified David's testimony. The waiver contains defendant's signature apparently freely given, and Hebert's signature as a witness also appears thereon.
In State v. Yarbrough, 418 So.2d 503 (La. 1982), the Supreme Court, in dealing with the voluntary consent to search form, said:
"Defense counsel maintains Ms. Scott only acquiesced to a claim of lawful authority and her subsequently executed consent form cannot vindicate an earlier unwarranted search.
Under its contention, in addition to proving the consent was given, the State has the burden of proving it was freely and voluntarily given. State v. Wolfe, La., 398 So.2d 1171 [1117] (1981). Only by analyzing the circumstances of an individual consent can one ascertain whether it was voluntary or coerced.
In the instant case, the issue of consent turns on the credibility of the two witnesses giving contradictory testimony as well as the circumstances surrounding the consent. Officer Keating testified that Ms. Scott consented at the outset and cooperated fully. Ms. Scott, however, testified that she did not consent to a search throughout the apartment. Because consent is a question of fact involving the credibility of witnesses, the determination of the trial judge, who had an opportunity to observe and hear the witnesses, is given great weight on review. State v. Robinson, 386 So.2d 1374 (La. 1980); State v. Dunbar, 356 So.2d 956 (La.1978); State v. Schouest, 351 So.2d 462 (La.1977); State v. Temple, 343 So.2d 1024 (La.1977)."
418 So.2d at 506. *1024 The trial judge observed the witnesses. Nothing contradicted their testimony. He did not err in his ruling on the motion to suppress, and assignment of error number 1 is without merit.
In assignment of error number 2, defendant asserts that the trial court erred in denying his motion to recuse the trial judge. The record indicates that after denying the motion to suppress, the trial judge, in open court, asked defense counsel, "How much alcohol have you consumed this morning." Counsel responded that he had not consumed any alcohol, whereupon the trial judge indicated that he had smelled alcohol on his breath. Counsel asked the judge for an apology, which he refused to give. After counsel's repeated assertions that he had had nothing to drink, the trial judge indicated that he would take counsel's word for it, but admonished him never to appear in his court smelling of alcohol. Based on this verbal confrontation, counsel filed a motion to recuse, which the trial judge denied without referring it to another judge for a hearing. The written motion to recuse specifically sets forth that the trial judge accused counsel of being intoxicated in court and showed open hostility toward defendant and counsel by the manner in which he conducted the motion to suppress.
The specific grounds for recusation are set forth in La.C.Cr.P. 671. The key factor, in the absence of more specific grounds, is whether the trial judge is able to conduct a fair and impartial trial. The procedure for recusing a trial judge is found in La.C.Cr.P. 674, to-wit:
"A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675."
We find that the trial judge did not abuse his discretion in refusing to refer the motion to another judge for a hearing. The transcript indicates that after the trial court's inquiry and counsel's response, the trial judge indicated that he would take counsel's word for the fact that he was not intoxicated. Our review of the transcript of the entire proceedings, especially the trial itself, indicates that the trial judge was even-handed throughout the trial, and that counsel's apprehensions over his ability to obtain a fair trial were mistaken. Assignment of error number 2 is without merit.
Assignment of error number 4 deals with the alleged error in imposing an excessive sentence. The maximum sentence for violation of La.R.S. 40:966(B)(2) is ten years imprisonment, plus a $15,000.00 fine. The transcript of the sentencing hearing indicates that the court articulated in elaborate detail the reasons for its sentence. While the pre-sentence investigation indicated no prior history of convictions, defendant had been arrested on three prior occasions. Of more importance here, were the facts surrounding the crime. The court was impressed with the tremendous quantity of marijuana obtained from the premises in all states of cultivation and production. It was also impressed with the fact that several pistols were confiscated in various locations along with the marijuana, and felt that due to the enormity of the wholesale operation, that it was probable that defendant would do the same thing again if he obtained a suspended sentence. It felt that, under the circumstances, correctional treatment in a custodial environment would be beneficial, and that a suspended or lesser sentence would certainly deprecate the seriousness of an offense involving such a vast quantity of marijuana. The court then assessed a sentence of five years with the Department of Corrections. We agree with the trial court in its analysis of its sentencing responsibilities herein and find that the sentence was not excessive in any regard.
*1025 For the reasons hereinabove set forth, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The bill of information erroneously cites La. R.S. 40:967 as the statutory base for the charges against defendant. Defendant does not complain about this clerical error. Clearly no prejudice or surprise occurred, as defendant did not raise an objection during any stage of these proceedings. The bill, notwithstanding this error, sufficiently informed defendant of this charge. La.C.Cr.P. 464.
[2] Assignment number 3 was not briefed, so was not separately considered; however, the effect of dealing with assignment number 1 is to also consider assignment number 3.