# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 07-138


**IRENE PREJEAN**

**VERSUS**

**THE ORIGINAL KEVIN GUIDRY PRODUCE MARKET, INC.**


**************
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2005-2974
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Billy H. Ezell, Judges.

**REVERSED.**

**Hawkins & Villemarette, L.L.C.**
**Scott M. Hawkins**
**Chris Villemarette**
**Marikatherine Sonnier**
**107 Regency Square**
**Lafayette, Louisiana 70508**
**(337) 233-8005**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
        **Irene Prejean**

**Allen & Gooch**
**(A Law Corporation)**
**John H. Hughes**
**P.O. Drawer 3768**
**Lafayette, Louisiana 70502-3768**
**(337) 291-1440**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **The Original Kevin Guidry Produce Market, Inc.**

**COOKS, Judge.**

## STATEMENT OF THE CASE

Bergie Prejean was killed in the parking lot of The Original Kevin Guidry Produce Market (Guidry's) when an employee of Guidry's, driving a company refrigerated truck, backed over him. His surviving spouse, Irene, filed an *in forma pauperis* petition for his wrongful death and a survival claim against Guidry's. Later, Irene filed an amending petition under the Fair Labor Standards Act alleging, in the alternative, if Bergie was determined to be an employee of Guidry's, Guidry's is liable for damages equal to the amount of unpaid wages, overtime wages and appropriate minimum wages as well as penalties and attorney's fees. Guidry's filed a motion for summary judgment asserting Bergie was an employee of Guidry's and not an independent contractor and Irene's exclusive remedy lies under the workers' compensation statute. The trial court granted the Defendant's motion dismissing Plaintiff's claim in tort but reserving the claims under the Fair Labor Standards Act. We have reviewed the record presented on the motion for summary judgment and find, as matter of law, Guidry's is not entitled to the tort immunity protection afforded under the workers' compensation statute. Accordingly, we reverse the decision of the trial court granting summary judgment in favor of Guidry's dismissing Irene's petition in tort for the death of her husband.

## LAW AND DISCUSSION

Guidry's seeks the immunity from tort liability afforded under the workers' compensation statute and is alleging there is no material fact in dispute that Bergie was an employee. The evidence submitted by Guidry's to support its assertion that Bergie was an employee, namely the work schedule, payroll records, insurance records, and tax records, indicates Guidry's set up an illegal employment relationship

1

with Bergie. Guidry's now seeks to benefit financially from its illegal activities by seeking the tort immunity protection of the workers' compensation act.

Bergie was seventy-four years old at the time of the accident. He was unable to read or write. His wife, Irene, was disabled and was totally dependent on Bergie for financial and household support. The couple had been married for over fifty years. Prior to his work for Guidry's, Bergie worked as a deckhand for Lake Charles Dredging and Towing for twenty-five years. He had no retirement and no savings. The record indicates Bergie had been working for the Guidry family for about twelve years. He arrived at work between 4:30 a.m. and 5:00 a.m. and left between 7:00 p.m. and 8:30 p.m. He worked seven days a week. For this Bernie was paid $250.00 in cash every week, less than the minimum wage. Bergie was not paid according to the hours he worked and he was not paid overtime. Bergie used his own vehicle to deliver produce. He paid for the fuel, maintenance and insurance on his own truck. Guidry's was unable to produce any evidence that Bergie was reimbursed for any expenses incurred in connection with his vehicle. Bergie's truck was titled to him and he had no placard or decal on his truck indicating he was a employee of Guidry's. Moreover, Bergie was not listed as an authorized driver on any automobile insurance policy Guidry's maintained on its vehicles. Significantly, on those occasions when Bergie was involved in vehicular accidents, all claims were made on Bergie's insurance policy and not on Guidry's insurance policy. The record indicates Guidry's is never mentioned in the claim records of any of the accidents. Guidry's clandestine financial scheme allowed it to shield itself from any liability to third parties who were injured while Bergie was engaged in employment activities on behalf of Guidry's.

Kevin Guidry confirmed Bergie was not listed as an employee of Guidry's on any financial statement nor did Guidry's maintain a personnel file on Bergie. Bergie

2

was treated as an independent contractor for liability and tax purposes. None of the money Guidry's paid Bergie was recorded in Guidry's business records nor was Bergie listed as an employee on the payroll records. Guidry's deducted no taxes from his pay and paid no insurance on him. Guidry's did not maintain a W-4 form, 941 form or any other document identifying Mr. Prejean as an employee. Guidry's did not deduct FICA or Social Security taxes from Mr. Prejeans's wages.

The following testimony occurred at the hearing between the counsel for Irene Prejean and Kevin Guidry:

Q:    Do you know – oh, for the all the money he was paid, the $250 a week, was it – did he ever – was there a receipt or anything along with that money?

A:    No.

Q:    Okay. So there's no record, as far as you can tell us, showing that that cash was paid to Bergie?

A:    No. No. I gave it to him.
                              . . . .
Q:    Is Bergie listed as an employee anywhere in your books?

A:    No. He – no. Not – well, he didn't – you know, I paid him cash. There's no – I didn't have him – there's no reason to have him anywheres.

It is undisputed Bergie was treated differently from other Guidry's employees. For example, Jeremy Willingham, the alleged tortfeasor, was paid by payroll check, wore a shirt with Guidry's logo on it, and was listed as an employee for purposes of workers' compensation and payroll taxes. Moreover, Guidry's would deduct taxes from Mr. Willingham's pay. Guidry's paid for the gas and maintenance on the truck Willingham drove for Guidry's. Willingham along with other employees, except Bergie, were required to punch a time clock which was then used to calculate the hours worked for payroll purposes.

Guidry's never paid a premium to his workers' compensation carrier on the

3

money he paid to Bergie. However, when Bergie was killed on the premises, Guidry's informed his workers' compensation carrier that Mr. Prejean was an employee and paid a small penalty for withholding payments into the system. Additionally, Guidry's paid back taxes on Bergie. As an explanation for its unusual employment relationship with Bergie, during oral argument counsel for Guidry's explained Bergie was not "just an employee" he was really "like family." Kevin Guidry referred to Bergie as "Vieux Chien" or "Old Dog," presumably a term of endearment. Of particular interest is the following exchange between counsel for Bergie and Kevin Guidry which confirms Guidry's financial arrangement with Bergie is not an isolated incident. There are apparently two other "employees" who are not reported as employees on the financial books of Guidry's:

A: We're paying back taxes on Vieux Chein (Prejean) and the other two – that the old man and the other two. We have to pay taxes.

Q: Okay. How did that come about?

A: I don't know. Well, when the accident happened. We had to show that they worked for us.

Q: So --

A: Bergie and the other two guys, we had to show that they worked for us. We had to pay back taxes.

After the fatal accident, Guidry's now contends Bergie is "just an employee" and it is entitled to the tort immunity provisions of the workers' compensation statute. Louisiana Revised Statutes 23:1032 is an immunity statute which provides the "rights and remedies herein granted to an employee . . . under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages . . . including any claims that might arise against his employer." La.R.S. 23:1032(A)(1)(a) and (b). However, in exchange for tort immunity the employee is guaranteed, in addition to other employee benefits, a no-fault remedy. In *O'Regan v. Preferred Enterprises, Inc.*, 98-1602 (La.

4

3/17/00), 758 So.2d 124, the Louisiana Supreme Court explained the *quid pro quo* scheme provided by the Act:

> The Act was a compromise between labor and industry pursuant to which labors received guaranteed no-fault recovery and industry was relieved of the possibility of large damage awards in the tort system. . . . This *quid pro quo* between employers and employees is central to the Act. Thus, it is a fundamental principle that the employee must have the possibility of recovery under the Act for this compromise to hold and for the scope of immunity from tort liability granted by the exclusivity provisions to hold. Barring a tort action without providing a substitute remedy under the Act would abrogate the *quid pro quo* compromise between the employee and the employer.

*Id.* at 136.

This *quid pro quo* bargain is at the heart a "*legal* employer-employee relationship" which allows an employer tort immunity. *Mott v. River Parish Maintenance,* 432 So.2d 1021 (La. 1986), 481 So.2d 827 432 (Dennis, J., dissenting)(emphasis added). In the present case, there is an absence of a legal employer-employee relationship. Guidry's set up an illegal contractual relationship with Bergie avoiding any responsibility to or for Bergie's service in connection with its business operations. This court in the past has not allowed an employer to benefit from an illegal contract of employment.

In *Ewert v. Georgia Casualty & Surety Co.*, 548 So.2d 358 (La.App. 3 Cir. 1989), *writ denied*, 551 So.2d 1339 (La. 1989), a mother brought a tort action on behalf of her minor son who was injured while performing logging operations. The employer hired a minor in a logging business in violation of the child labor laws and was seeking tort immunity when the minor was injured on the job. This court held an employer may not benefit financially from an illegal contract of employment and allowed the minor a remedy in tort. The court stated:

> A rule which allows the employer of an illegally employed minor to interpose the exclusive remedy defense to a tort suit is the very opposite of the principles announced in the above civil code articles. *It*

5

*allows the employer to benefit from a contract that has been legislatively condemned.* It allows the policy of the workers' compensation immunity provisions to triumph totally over the policy of the Child Labor Laws.

*Id.* at 362.

While *Ewert* involved a violation of the child labor laws, Louisiana has numerous other public policy statutes which specifically prohibit the type of employment relationship Guidry's had with Bergie. The Fair Labor Standards Act requires Guidry's to pay a minimum wage to all full-time employees, a mandate Guidry's failed to follow. Employers are required under federal law to withhold Social Security and FICA on all employees. Again, Guidry's violated this provision. Louisiana unemployment and workers' compensation statutes require employers to pay into the system. The record indicates Guidry's never contributed a dime into either the unemployment or the workers' compensation system on behalf of Bergie.[1] Moreover, Guidry's treatment of Bergie is not an isolated incident, but rather a pattern of deceptive behavior. There are two other employees working for Guidry's who are not reported anywhere on Guidry's financial records.

Guidry's illegal employment relationship with Bergie, and two other employees, harms not only Bergie but third parties as well. The record indicates Bergie was

---

[1] The amounts due under the workers' compensation system for the injury or death of an employee are fixed in advance and are not subject to negotiation. In this case, because Guidry's operated totally outside of the workers' compensation system, a correct calculation of Bergie's wages and benefits, and therefore the sum owed to his surviving spouse, is not provable by properly maintained records. It appears from the deposition testimony, Guidry's was attempting to negotiate a settlement with Bergie's widow. The following exchange occurred between counsel for Guidry's and Irene Prejean:

Q: If the workers' compensation insurance company said, "We will pay you $100.00 a week instead of $50.00", would that be enough?
A: I don't know.
Q: I think because a minute ago you told me that you thought $50.00 a week wasn't –
A: It wasn't enough.
Q: – sufficient.
A: Yes
Q: But you did admit –
A: I would have to think about it. I mean, I don't know.
Q: But you did admit that $50.00 was better than nothing, though, right?

involved in three vehicular accidents while in the course and scope of his "relationship" with Guidry's, delivering produce when these accidents occurred. Yet the victims made no claim against Guidry's because Bergie's truck was titled to him and there was no logo or decal identifying him as a delivery driver for Guidry's. Further, Bergie carried his own insurance and was not listed as a covered driver on Guidry's automobile insurance carrier.[2]

While Guidry's admits it purchased the trucks for Bergie, it attempts to excuse its failure to list Bergie on its insurance by asserting Bergie used the truck for his own personal use. Guidry's employment arrangement allowed it to shield its identity from third parties and thereby escape any financial responsibility for the torts committed while Bergie was engaged in the scope of his "relationship" delivering produce for Guidry's. Guidry's now wishes to pay a meager $250 fine and *de minimis* "back taxes" for alleged wages, well below the minimum pay scale, in exchange for complete protection and immunity from its tort liability for the death of Bergie. Had this tragic event not occurred and Guidry's liability insurance carrier was not facing full exposure for Bergie's death, there is nothing in the record to suggest Guidry's would voluntarily "come clean" and attempt to accept responsibility, willingly shared by other conscientious employers doing business in the state who "pay their fair share" for the bargain they received under the workers' compensation statute. To allow Guidry's to change Bergie's status after his death to justify its interest, and none other, would circumvent the policy considerations behind the enactment of Louisiana's public policy statutes including the workers' compensation act. We cannot allow an employer to benefit from his illegal activity. Guidry's violations in this case are not the result of oversight or ignorance, but rather, the record suggests, a deliberate pattern

---

[2] Bergie had the minimum insurance coverage allowed by law on his truck.

7

of behavior on the part of Guidry's specifically designed to avoid its full responsibility toward it employees and the public at large. Our holding is limited to the egregious facts presented before us and is in keeping with Louisiana's public policy laws. We find, as a matter of law, Guidry's is not entitled to the tort immunity protection afforded under the workers' compensation statute. Accordingly, we reverse the decision of the trial court granting Guidry's motion for summary judgment dismissing Irene Prejean's tort actions.

## DECREE

Based on the foregoing review of the record, we reverse the decision of the trial court granting Guidry's motion for summary judgment. All costs of this appeal are assessed to The Original Kevin Guidry Produce Market, Inc.

**REVERSED.**